UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTIFEX SOFTWARE, INC., <br> Plaintiff, <br> v. <br> HANCOM, INC., <br> Defendant. | Case No.16-cv-06982-JSC <br><br> **ORDER RE: DEFENDANT'S MOTION TO DISMISS** <br> Re: Dkt. No. 18 |

Plaintiff Artifex Software Inc. ("Artifex") brings breach of contract and copyright infringement claims against Defendant Hancom, Inc. Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is now pending before the Court.[1] (Dkt. No. 18.) After carefully considering the arguments and briefing submitted, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and DENIES the motion to dismiss.

## BACKGROUND

**A. Complaint Allegations**

Plaintiff develops and licenses software products that interpret files written in a page description language such as Adobe Systems Incorporated's Portable Document Format ("PDF") files. (Complaint ¶¶ 13-14.) PDF files generally permit a document created on one platform to be

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 11 & 19.)

displayed and/or printed on another platform exactly as it was on the first platform. (*Id.* ¶ 14.) Plaintiff owns Ghostscript which is the most widely used PDF interpreter not developed by Adobe Systems. (*Id.* ¶¶ 1, 16.) Ghostscript interprets files written in PDF for display on a computer screen or for printing. (*Id.* ¶ 15.) Plaintiff has expended substantial amounts on research and development of Ghostscript to improve and update the product. (*Id.* ¶ 16.)

Plaintiff's business is based on the revenues it derives from being the "exclusive commercial licensing agent of the Ghostscript interpreter technologies." (*Id.* ¶ 17.) Plaintiff offers commercial licenses to Ghostscript as well as for the public a conditional open source license called the GNU General Public License ("GNU GPL"). (*Id.* at ¶¶ 1, 17.) For those seeking to commercially distribute Ghostscript or any product that incorporates it, Plaintiff will grant a license to use, modify, copy, and/or distribute Ghostscript for a fee. (*Id.* ¶ 17.) There is no charge for licenses granted under the GNU GPL although such users must "comply with certain open-source licensing requirements." The GNU GPL was created to promote the open-source development of software products. (*Id.* ¶ 18.)

On July 29, 2008, Plaintiff obtained a copyright from the Registrar of Copyrights Certificate of Registration No. TX 6-854-034 for Ghostscript version 8.54 and all previous versions. (*Id.* ¶ 29; Dkt. No. 1-2 (Ex. 2).) On December 6, 2016, Plaintiff filed an application to register Ghostscript version 8.71. (Complaint ¶ 29; Dkt. No. 1-3 (Ex. 3)) Plaintiff placed copyright notices on Ghostscript versions 8.54 and 8.71. (Complaint ¶ 30.)

Defendant is a South Korean software company that owns and develops Hangul, a word processing software used primarily in South Korea and the United States as an alternative to Microsoft Word, as well as Hancom Office, a suite of software programs which include Hangul, a spreadsheet software, and a presentation software. (*Id.* ¶¶ 2, 19.) Defendant incorporated Ghostscript into its Hangul software "beginning as early as 2013." (*Id.* ¶¶ 2, 20.) Because Defendant did not have a commercial license for Ghostscript, its use and distribution of Ghostscript constituted consent to the terms of the GNU GPL. (*Id.* ¶ 21.) Section 9 of the GNU GPL states:

> You are not required to accept this License in order to receive or run

> a copy of the Program. Ancillary propagation of a covered work
> occurring solely as a consequence of using peer-to-peer
> transmission to receive a copy likewise does not require acceptance.
> However, nothing other than this License grants you permission to
> propagate or modify any covered work. These actions infringe
> copyright if you do not accept this License. Therefore, by modifying
> or propagating a covered work, you indicate your acceptance of this
> License to do so.

(Complaint ¶ 21; Dkt. No. 1-1 (Ex. 1) at 10.) In addition, Defendant's website stated that it had licensed Ghostscript under the GNU GPL. (*Id*. ¶ 2.) Nonetheless, Defendant failed to comply with key provisions of the GNU GPL. (*Id*. ¶¶ 2, 22.) In particular, because Defendant integrated Ghostscript into its software without revealing to the end-user that Ghostscript was part of the Hancom software, the GNU GPL required Defendant to distribute its software with the accompanying source code. *(Id.* ¶¶ 22-24.) Defendant did not do so and thus violated the GNU GPL, terminating Defendant's license to use Ghostscript. (*Id*. ¶¶ 25-28.) Defendant's failure to obtain a commercial license deprived Plaintiff of a licensing fee, or, alternatively, its failure to comply with the GNU GPL deprived Plaintiff of the opportunity "to further promote the advancement of interpreter technologies." (*Id.* ¶¶ 1, 3, 17.)

Defendant "purportedly removed Ghostscript from the Hancom software in August 2016 after receiving a demand letter from Artifex." (*Id*. ¶ 20.)

**B.     Procedural Background**

Plaintiff Artifex alleges two claims for relief: (1) breach of contract, and (2) copyright infringement. Plaintiff seeks permanent injunctive relief enjoining Defendant from further use of any products using Ghostscript, enjoining Defendant from directly or indirectly infringing Artifex's copyright in Ghostscript, and requiring Defendant to distribute to each licensee of Hangul and Hancom Office the complete source code for the products in accordance with the GNU GPL. (Complaint at pp. 11-12.[2]) Plaintiff also seeks compensatory, consequential, statutory, and exemplary damages, as well as attorney's fees and costs. (*Id*.)

Defendant responded to the complaint by filing the underlying 12(b)(6) motion to dismiss.

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**DISCUSSION**

Defendant makes three arguments. First, that Plaintiff has failed to state a claim for breach of contract and that any such claim is preempted by copyright law. Second, that Plaintiff's copyright claim must be dismissed in part because Plaintiff has failed to allege that Defendant committed a predicate act in the United States. Finally, Defendant moves to strike portions of the relief sought in the complaint. The Court addresses each argument in turn.

**A. Plaintiff's Breach of Contract Claim**

**1) Plaintiff has Adequately Pled a Breach of Contract Claim**

The elements of breach of contract under California law are: (1) the existence of a contract; (2) plaintiff's performance under the contract; (3) defendant's breach of the contract; and (4) that plaintiff was damaged as a result of the breach. *See Buschman v. Anesthesia Bus. Consultants*, LLC, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. May 13, 2014) (citing *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008)). Breach of contract claims are subject to the notice pleading standard of Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Defendant contends that Plaintiff's reliance on the unsigned GNU GPL fails to plausibly demonstrate mutual assent, that is, the existence of a contract. Not so. The GNU GPL, which is attached to the complaint, provides that the Ghostscript user agrees to its terms if the user does not obtain a commercial license. Plaintiff alleges that Defendant used Ghostscript, did not obtain a commercial license, and represented publicly that its use of Ghostscript was licensed under the GNL GPU. These allegations sufficiently plead the existence of a contract. *See, e.g.*, *MedioStream, Inc. v. Microsoft Corp.*, 749 F. Supp. 2d 507, 519 (E.D. Tex. 2010) (concluding that the software owner had adequately pled a claim for breach of a shrink-wrap license).

Plaintiff's allegations of harm are also adequately pled. Plaintiff plausibly alleges that Defendant's use of Ghostscript without obtaining a commercial license or complying with GNU GPL deprived Plaintiff of the licensing fee, or alternatively, the ability to advance and develop Ghostscript through open-source sharing. Indeed, as the Federal Circuit has recognized, there is harm which flows from a party's failure to comply with open source licensing: "[t]he lack of

4

money changing hands in open source licensing should not be presumed to mean that there is no economic consideration" because "[t]here are substantial benefits, including economic benefits, to the creation and distribution of copyrighted works under public licenses that range far beyond traditional license royalties." *Jacobsen v. Katzer*, 535 F.3d 1373, 1379 (Fed. Cir. 2008). Although on remand from the Federal Circuit the district court concluded that plaintiff's open source license breach of contract claim inadequately pled damages, the plaintiff there only alleged "[b]y reason of the breach, Plaintiff has been harmed." *Jacobsen v. Katzer* (*Jacobsen II*), 609 F. Supp. 2d 925, 933 (N.D. Cal. 2009). Here, in contrast, Plaintiff's allegations regarding the dual licensing structure are sufficient to plead damages for Plaintiff's breach of contract claim. Defendant's argument is more appropriately addressed on summary judgment.

### 2) The Breach of Contract Claim is not Preempted

Next, Defendant insists that even if the complaint states a claim for breach of contract, the claim still must be dismissed as preempted by federal copyright law.

Federal copyright preemption of overlapping state law claims under the Copyright Act, 17 U.S.C. § 301, is "explicit and broad" and "prohibits state-law protection for any right equivalent to those in the Copyright Act." *G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 904 (9th Cir.1992). Section 301 establishes a two-part test for preemption: (1) the claims must come within the subject matter of the copyright, and (2) the rights granted under state law must be equivalent to any of the exclusive rights within the general scope of copyright as set forth in the Act. *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998). To avoid preemption under the second prong, the state law claim "must protect rights which are qualitatively different from the copyright rights." *Design Art v. Nat'l Football League Properties, Inc.*, No. 00CV593 JM (JAH), 2000 WL 33151646, at *2 (S.D. Cal. Aug. 18, 2000) (citing *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir.1987), overruled on other grounds by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). Thus, courts ask whether the state law claim has an "extra element" that changes the nature of the claim. *Del Madera*, 820 F.2d at 977.

Here, both parties agree that the first prong is met—Plaintiff's breach of contract claim is based on Defendant's use of Plaintiff's copyrighted software: Ghostscript. They disagree,

however, regarding whether the second prong is met; namely, whether the copyright claim contains an "extra element." Plaintiff relies on *Versata Software, Inc. v. Ameriprise Fin., Inc.*, 2014 WL 950065, at *5 (W.D. Tex. Mar. 11, 2014), which concluded that "[c]opyright law imposes no open source obligations, and [defendant] has [counter]sued based on [plaintiff's] breach of an additional obligation: an affirmative promise to make its derivative work open source because it incorporated an open source program into its software. [The] claim therefore requires an 'extra element' in addition to reproduction or distribution: a failure to disclose the source code of the derivative software." *Id*. Defendant counters that *Versata* was decided under a different GPL and insists that the court should instead follow the court's rationale in *Jacobsen II*. There, the court concluded that the breach of contract claim was preempted "because it allege[d] violations of the exact same exclusive federal rights protected by Section 106 of the Copyright Act, the exclusive right to reproduce, distribute and make derivative copies." *Jacobsen II*, 609 F. Supp. 2d at 933. Defendant, however, does not explain why the GPU GPL's open source requirement is not the required extra element and the argument was apparently not made in *Jacobsen II*. Defendant has thus not met its burden of proving preemption. *See Stengel v. Medtronic*, 704 F.3d 1224, 1227–28 (9th Cir. 2013) (en banc) ("Parties seeking to invalidate a state law based on preemption bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law.") (internal citation and quotation marks omitted); *Hendricks v. StarKist Co*., 30 F. Supp. 3d 917, 925, n.5 (N.D. Cal. 2014) (noting that preemption is an affirmative defense for which defendant bears the burden of proof).

In any event, the Ninth Circuit Court has held that the Copyright Act "does not preempt causes of action premised upon possible extraterritorial infringement." *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp*., 69 F.3d 381, 387 (9th Cir. 1995). As discussed below, both parties agree that this action is premised upon possible extraterritorial infringement to which the Copyright Act would not apply. Because any such extraterritorial infringement would not be subject to the Copyright Act, claims based on this infringement would not be preempted and thus could be maintained under state law instead. *Id*.

\*\*\*

1    Accordingly, Defendant's motion to dismiss Plaintiff's breach of contract claim is denied.
2    Plaintiff has adequately pled the claim and Defendant has not proved at this stage that the claim is
3    preempted by the Copyright Act.

### B.     Plaintiff's Copyright Claim

There is no dispute that Plaintiff has adequately alleged that Defendant committed acts of infringement in the United States: "Hancom has offered and distributed its infringing products incorporating Ghostscript in California through the Internet." (Complaint ¶ 7.) Defendant, however, moves to dismiss Plaintiff's copyright claim to the extent that it is predicated on any extraterritorial acts of alleged infringement. As the Ninth Circuit has recognized, "wholly extraterritorial acts of infringement cannot support a claim under the Copyright Act." *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1095 (9th Cir. 1994) (en banc).

Plaintiff maintains that the motion to dismiss is premature and that a motion to dismiss claims of foreign infringement must be denied where domestic infringing acts are sufficiently pled as they are here. Plaintiff suggests that discovery will help identify the specific locations of Defendant's infringing activities, including where Defendant "physically reproduced or prepared derivative works of Ghostscript." (Dkt. No. 27 at 15:1.) Further, because Plaintiff is located in the United States and Ghostscript is offered for licensing and download from the United States, "it is possible that Hancom's infringing acts will all be deemed to have resulted from predicate acts occurring in the United States." (*Id.* at 15:3-5.)

Defendant insists that the only exception to the extraterritorial limits on copyright law is where a "predicate infringing act is committed entirely within the United States that enables further infringement outside the United States." (Dkt. No. 29 at 11:9-11.) Defendant relies on *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987 (9th Cir. 1998), which holds that the Copyright Act may apply where an act of infringement is completed entirely within the United States and such an infringing act enabled further exploitation abroad. *Id.* at 990-92. Courts, however, are split on "whether all parts of the infringing act must take place in the United States, or if it is sufficient that some part of the infringing acts take place in the United States." *Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1145 (N.D. Cal. 2011). Defendant insists that the

only reasonable inference that can be drawn from the Complaint is that the infringement took place in South Korea where Hancom is located. Not so.

The Complaint alleges that Plaintiff, a California company, offered Ghostscript for license either commercially or through the GNU GPL on the Internet, that Defendant licensed Ghostscript via the GNU GPL, that it integrated Ghostscript into its Hangul software without complying with the open-source licensing requirements, and that it offered and distributed the allegedly infringing product on the Internet. (Complaint ¶¶ 2, 6-7, 10, 17-18.) Defendant insists that because it is a South Korean company the Court must draw the inference that all the predicate acts—the copying, integrating and incorporating of Plaintiff's software—occurred in South Korea. While that is certainly a reasonable inference, the Court is required to draw all reasonable inferences in Plaintiff's favor—not the other way around. There are no facts alleged in the complaint that would prohibit the inference that at least some infringement occurred in the United States.

The cases upon which Defendant relies are distinguishable. In *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102 (D.D.C. 2011), the court addressed whether the Copyright Act reached the defendant's use of plaintiff's copyrighted photographs in restaurants outside the United States. The plaintiff argued that the defendant's infringement in the United States was a sufficient predicate act to reach the photographs published outside the United States because the defendant used the American restaurants to entice the opening of foreign restaurant franchisees. The court concluded that this argument "stretches the predicate act exception too far." *Id.* at 124. Here, in contrast, the allegations are simply too sparse for the Court to conclude that the Copyright Act does not reach Defendant's software distributed abroad. *See, e.g., Damental Too, Ltd. v. Gemmy Indus. Corp.*, No. 96 CIV. 1103 (MBM), 1996 WL 724734, at \*6 (S.D.N.Y. Dec. 17, 1996) (dismissing extraterritorial copyright claim because plaintiff had not alleged any domestic copyright infringement—"mere authorization and approval of copyright infringements taking place outside the United States is not a copyright violation"); *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988) (noting that copyright protection applied "[i]f the illegal reproduction of the poster occurred in the United States and then was exported to Israel" but not if the reproduction occurred solely in Israel).

8

In short, while the Copyright Act may not reach all of Defendant's challenged acts, the Court cannot resolve this issue on this record. The Court therefore denies the motion to dismiss without prejudice to raising this issue in a subsequent pleading should the evidence suggest that the requisite link between the extraterritorial infringement and activities in the United States does not exist. *See, e.g.*, *Goes Int'l, AB v. Dodur Ltd.*, No. 14-CV-05666-LB, 2016 WL 427369, at *3 (N.D. Cal. Feb. 4, 2016) (allowing discovery into whether plaintiff had "a viable claim for damages flowing from extraterritorial exploitation of an infringing act that occurred entirely inside the United States.") (internal quotation marks omitted); *Fyk v. Roth*, No. CIV.A. 94-3826, 1995 WL 290444, at *2 (E.D. Pa. May 9, 1995) ("denying motion to dismiss claims based on extraterritorial infringements because "[f]urther detailed information as to acts occurring within and without the United States is necessary in order to render a decision on this claim, which will only be gained through discovery.").

## C. Defendant's Request to Dismiss Certain Requests for Relief

Finally, Defendant moves to dismiss portions of Plaintiff's prayer for relief including Plaintiff's request for specific performance, restitution, and consequential damages on the breach of contract claim, and statutory and exemplary damages, as well as attorney's fees on the copyright claim.[3] Plaintiff concedes that as pled it is not entitled to exemplary damages on either claim, but otherwise contends that Defendant's request to dismiss and parse portions of its prayer for relief is otherwise improper at this stage. The Court agrees.

Generally, "factually based arguments [to dismiss relief sought] are appropriate …at a later stage of litigation, not on the pleadings." *Whittlestone*, 618 F.3d at 975 n.2. Accordingly, the Court will not dismiss the request for specific performance—directing Defendant to distribute its source code—even though the ultimate imposition of such relief is extremely dubious. The result

---

[3] Defendant's motion is brought under Rule 12(b)(6) which governs dismissal for failure to state a claim upon which relief may be granted, but Defendant characterizes this portion of its motion as seeking to strike certain claims for relief. While "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" under Rule 12(f), dismissal under Rule 12(b)(6) is the proper vehicle, where, as here, a defendant challenges the legal sufficiency of certain requests for relief. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). The Court will thus construe Defendant's request as one for dismissal.

9

is the same for the restitution demand. "To find otherwise would confuse pleading under Federal Rule of Procedure 8(a) with proof." *Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO, 2015 WL 1526590, at *4 (C.D. Cal. Mar. 17, 2015)

Defendant's reliance on *Colonial Life & Acc. Ins. Co. v. Stentorians-L.A. Cty. Black Fire Fighters*, No. 2:13-CV-9235-CAS, 2014 WL 794571 (C.D. Cal. Feb. 24, 2014), is unavailing, as there the court dismissed the claim for specific performance because the "terms of the agreement [plaintiff sought specific performance of] are not sufficiently certain to make the precise act which is to be done clearly ascertainable." *Id.* at *8. Here, neither party alleges lack of ascertainability. In contrast, in *Oracle Corp. v. DrugLogic, Inc.*, No. C 11-00910 JCS, 2011 WL 5576267, at *14 (N.D. Cal. Nov. 16, 2011), the court denied a request to strike a claim for specific performance because the defendant had not cited any case establishing that it was appropriate to strike a request for specific performance at the pleadings stage where the party included general allegations as to breach of contract, and there was a threat of continued harm. While Defendant correctly emphasizes that there is no allegation of continued harm here, "at the pleading stage, the court simply is not in a position to determine whether an adequate remedy at law exists" particularly where, as here, Defendant contests Plaintiff's entitlement to damages. *JPMorgan Chase Bank, N.A. v. Paramount Residential Mortg. Grp., Inc.*, No. 13-00471JGBSPX, 2013 WL 12133894, at *5 (C.D. Cal. May 30, 2013); *see also Ceruzzi Holdings, LLC v. Inland Real Estate Acquisitions, Inc.*, No. 09–5440, 2010 WL 1752184, at *3 (D. N.J. April 29, 2010) ("That the plaintiffs may have to eventually demonstrate the inadequacies of damages, however, does not mean that they must demonstrate this at the pleading stage. Although specific performance is an appropriate remedy only if damages are impracticable or inadequate, [p]laintiffs may plead alternative theories requesting damages and specific performance until discovery may better elucidate which remedy, if any is appropriate.") (internal citation and quotation marks omitted).

Nor is the Court persuaded by Defendant's fact-based argument that specific performance is barred by Section 8 of the GNU GPL. Because this argument requires interpretation of contract language—the effect of which the parties dispute—it cannot be resolved at this stage. *See Gardner v. RSM & A Foreclosure Servs.*, LLC, No. 12CV2666, 2013 WL 1129392, at *3 (E.D.

Cal. Mar. 18, 2013).

Defendant's motion to dismiss portions of Plaintiff's prayer for relief is therefore denied without prejudice to renewing its arguments on summary judgment.

## CONCLUSION

For the reasons explained above, Defendant's motion to dismiss is DENIED. (Dkt. No. 18.) Plaintiff's request for exemplary damages is deemed withdrawn.

Defendant shall file its answer by May 18, 2017.

The parties shall appear for an Initial Case Management Conference on June 15, 2017 at 1:30 p.m. in Courtroom F, 450 Golden Gate Ave., San Francisco, California. A Joint Case Management Conference Statement is due June 8, 2017.

**IT IS SO ORDERED.**

Dated: April 25, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge