DARIN W. SNYDER (S.B. #136003)
dsnyder@omm.com
JESSE J. KOEHLER (S.B. #300530)
jkoehler@omm.com
ASHISH SUDHAKARAN (S.B. #312941)
asudhakaran@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Plaintiff
ARTIFEX SOFTWARE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ARTIFEX SOFTWARE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HANCOM, INC.,<br><br>Defendant. | Case No. 3:16-cv-06982-JSC<br><br>**PLAINTIFF ARTIFEX SOFTWARE, INC.'S OPPOSITION TO DEFENDANT HANCOM, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE MONETARY RELIEF AVAILABLE TO PLAINTIFF ARTIFEX SOFTWARE, INC. ON ITS BREACH OF CONTRACT CLAIM**<br><br>Hearing Date: August 17, 2017<br>Time: 9:00 a.m.<br>Judge: Hon. Jacqueline Scott Corley<br>Courtroom: Ctrm F, 15th Floor |

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. COUNTER STATEMENT OF FACTS ..... 3

- A. Artifex Offers Ghostscript Only Through Its Dual Licensing Structure ..... 3
- B. Hancom's Breach of the GNU GPL ..... 4
- C. Current State of Discovery ..... 5

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 7

- A. No Legal Basis Exists for Summary Judgment Precluding Artifex's Recovery of Monetary Damages Measured by a Reasonable Royalty or Disgorgement ..... 7
  - 1. A Reasonable Royalty Is an Established and Available Measure of Artifex's Expectation-Based Damages Under California Law ..... 8
  - 2. Both Disgorgement of Profits and a Reasonable Royalty Are Appropriate Measures of Artifex's Restitution-Based Damages ..... 13
- B. No Legal Basis Exists for Summary Judgment Limiting the Time Period of Artifex's Monetary Recovery ..... 17
  - 1. Hancom's Obligations Under the GNU GPL Were Not Automatically Terminated, and Each Distribution of Hancom's Software Was a Continuing and Separate Breach ..... 17
  - 2. Factual Disputes Preclude Summary Judgment on Hancom's Breach and Termination Arguments ..... 21
- C. Summary Judgment in Hancom's Favor Would Be Disastrous Public Policy Because It Would Render Meaningless Any Attempt to Enforce Open Source Contracts ..... 23

V. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Acree v. Gen. Motors Acceptance Corp.*,
92 Cal. App. 4th 385 (2001) ........ 8, 16

*Agrigenetics, Inc. v. Pioneer Hi-Bred Int'l, Inc.*,
2010 WL 4683936 (S.D. Ind. Nov. 10, 2010) ........ 15

*Ajaxo Inc. v. E*Trade Fin. Corp.*,
187 Cal. App. 4th 1295 (2010) ........ 11

*Ajaxo Inc. v. E*Trade Grp. Inc.*,
135 Cal. App. 4th 21 (2005) ........ 14, 15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 6

*Antonick v. Elec. Arts Inc.*,
2014 WL 245018 (N.D. Cal. Jan. 22, 2014) ........ 16

*Celeritas Technologies, Ltd. v. Rockwell Int'l Corp.*,
150 F.3d 1354 (Fed. Cir. 1998) ........ 9, 10, 11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 7

*CitriLite Co. v. Cott Beverages, Inc.*,
721 F. Supp. 2d 912 (E.D. Cal. 2010) ........ 21

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
68 Cal. App. 4th 445 (1998) ........ 19

*Darulis v. Garate*,
401 F.3d 1060 (9th Cir. 2005) ........ 7

*Document Sec. Sys. v. Coupons.com*,
55 F. Supp. 3d 485 (W.D.N.Y. 2014) ........ 12

*Doe v. Culverwell*,
35 Cal. 291 (1868) ........ 18

*Fageol & Tate v. Baird-Bailhache Co.*,
138 Cal. App. 1 (1931) ........ 20

*Foster Poultry Farms, Inc. v. SunTrust Bank*,
377 F. App'x 665 (9th Cir. 2010) ........ 16

*Fox Broad. Co. v. Dish Network LLC*,
160 F. Supp. 3d 1139 (C.D. Cal. 2015) ........ 12, 13

*Gilkyson v. Disney Enters., Inc.*,
244 Cal. App. 4th 1336 (2016), *review denied* (May 25, 2016) ........ 19

*Grail Semiconductor, Inc. v. Mitsubishi Elec. & Elecs. USA, Inc.*,
225 Cal. App. 4th 786 (2014) ........ 8, 9, 10

*Hurtado v. Superior Court*,
11 Cal. 3d 574 (1974) .......... 7

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) .......... 6

*Jacobsen v. Katzer*,
535 F.3d 1373 (Fed. Cir. 2008) .......... 9, 25

*Jill Stuart (Asia) LLC v. Sanei Int'l Co.*,
2013 WL 3203893 (S.D.N.Y. June 17, 2013) .......... 12

*Jim Beam Brands Co. v Tequila Cuervo La Rojeña S.A. de C.V.*,
2011 N.Y. Misc. LEXIS 7257 (N.Y. Sup. Ct. July 12, 2011) .......... 12

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*,
34 Cal. 4th 960 (2004) .......... 8

*Margolis v. Ryan*,
140 F.3d 850 (9th Cir. 1998) .......... 7

*Martin v. UHaul Co. of Fresno*,
204 Cal. App. 3d 396 (1988) .......... 21

*McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*,
339 F.3d 1087 (9th Cir. 2003) .......... 14

*Miottel v. Cohen*,
2005 Cal. App. Unpub. LEXIS 10578 (2005) .......... 18

*Move, Inc. v. Beardsley*,
2016 WL 6106729 (C.D. Cal. Mar. 10, 2016) .......... 16

*Murphy v. Schneider Nat'l, Inc.*,
362 F.3d 1133 (9th Cir. 2004) .......... 6

*Natural Alternatives, LLC v. JM Farms*,
2016 WL 5844475 (E.D. Ky. Sept. 30, 2016) .......... 20

*Postal Instant Press, Inc. v. Sealy*,
43 Cal. App. 4th 1704 (1996) .......... 20, 21

*Romano v. Rockwell Int'l, Inc.*,
14 Cal. 4th 479 (1996) .......... 19, 20

*Rosal v. First Fed. Bank of Cal.*,
671 F. Supp. 2d 1111 (N.D. Cal. 2009) .......... 14

*Sikes v. McGraw-Edison Co.*,
665 F.2d 731 (5th Cir. 1982) .......... 12

*Spinelli v. NFL*,
96 F. Supp. 3d 81 (S.D.N.Y. 2015) .......... 14

*SPSS Inc. v. Nie*,
2009 WL 2579232 (N.D. Ill. Aug. 19, 2009) .......... 13

*Susteen Inc. v. Sourcenext Corp.*,
266 F. App'x 690 (9th Cir. 2008) .......... 20

*Veritas Operating Corp. v. Microsoft Corp.*, 2008 WL 7404617 (W.D. Wash. Feb. 26, 2008) .................... 12

*Vitro Corp. of Am. v. Hall Chem. Co.*, 292 F.2d 678 (6th Cir. 1961) .................... 12

*Wallis v. Farmers Grp., Inc.*, 220 Cal. App. 3d 718 (1990) .................... 8

**STATUTES**

Cal. Civ. Code § 1641 .................... 19

Cal. Civ. Code § 3300 .................... 8, 12

Cal. Civ. Code § 3521 .................... 14

Cal. Civ. Code § 3523 .................... 14

**OTHER AUTHORITIES**

1 Witkin, Summary of Cal. Law (10th), Contracts § 1013 .................... 13, 14

Ben Kerschberg, *How Postgres and Open Source Are Disrupting the Market for Database Management Systems*, Forbes, https://www.forbes.com/sites/benkerschberg/2016/03/08/how-postgres-and-open-source-are-disrupting-the-market-for-database-management-systems (Mar. 8, 2016) .................... 4, 24

Bradley M. Kuhn et al., *A Practical Guide to GPL Compliance*, Aug. 26, 2008, *available at* https://www.softwarefreedom.org/resources/2008/compliance-guide.html .................... 18

Raymond T. Nimmer & Jeff Dodd, *Modern Licensing Law* § 11:52 (2010–11 ed.) .................... 15

Richard Stallman, *On Selling Exceptions to the GNU GPL*, Free Software Foundation, https://www.fsf.org/blogs/rms/selling-exceptions (Jan. 7, 2010) .................... 24

*The State of the Octoverse 2016*, GitHub, https://octoverse.github.com (Sept. 14, 2016) .................... 4, 24

**RULES**

Fed. R. Civ. P. 56(a) .................... 6

Fed. R. Civ. P. 56(d) .................... 7, 23

## I. INTRODUCTION

Hancom views Artifex's willingness to license its software under the GNU General Public License as an invitation to freeload. According to Hancom, the GNU GPL is a just a bunch of words with no force and no repercussions if breached. Hancom had a choice when it downloaded and incorporated Ghostscript into its own software—either comply with the terms of the GNU GPL or enter into a commercial license with Artifex. Hancom chose to do neither: it did not pay Artifex the required licensing fee, and it did not fulfill its promises under the GNU GPL. Now, after commercially profiting from Ghostscript for over eight years, Hancom asks the Court to hold as a matter of law that Artifex is not entitled to be made whole for Hancom's breach and one-sided enjoyment of the benefits of the GNU GPL. But that request and Hancom's motion are unsupported by California law, precluded by factual disputes, and must be denied.

First, California courts and those interpreting California law have consistently recognized the availability of a reasonable royalty as a measure of damages for breach of contract and, in particular, for breach of royalty-free contracts. Hancom's motion mistakes the availability of a reasonable royalty as a measure of damages for an attempt by Artifex to write a royalty provision into the GNU GPL. Artifex intends no such thing. To the contrary, Artifex licenses Ghostscript under a dual licensing model specifically because the royalty-free nature of the GNU GPL is an alternative to Artifex's commercial licenses, having concluded that the benefits Artifex receives under the GNU GPL are equivalent to the royalty Artifex would receive from a commercial license. Hancom's authorities related to adding a royalty provision to a contract that lacks one are thus irrelevant.

Second, California law recognizes the availability of restitution for a breach of contract claim measured by the value of the benefit received by the breaching party. Here, the value of the benefit could either be measured by Hancom's profits or by the reasonable royalty Hancom would have paid for a commercial license. Hancom's motion confuses unjust enrichment or restitution as a ***measure*** of contractual damages with a ***separate claim*** for unjust enrichment. Its arguments and cited cases concerning the legal viability of a claim for unjust enrichment are, therefore, inapposite.

Third, Hancom's arguments concerning the effect of the termination clause of the GNU GPL misread the terms of the GNU GPL. Although Hancom's rights of distribution terminated upon breach of the GNU GPL, the contract did not. Hancom's obligations under the GNU GPL—such as the disclosure of source code—continued, and Hancom continued, and still continues, to breach those obligations each time it distributes Hangul and Hancom Office containing Artifex's Ghostscript. California law allows Artifex to recover for all of Hancom's conduct, not just a single initial breach.

There are good reasons why the law rejects each of the propositions in Hancom's motion. A ruling in Hancom's favor would effectively authorize anyone to enter into the GNU GPL with a licensor and face no repercussions for breaching that contract. Such a ruling would incentivize companies like Hancom to use the millions of available open source software products for commercial gain and ignore the requirements of the GNU GPL with impunity. Hancom asks the Court to dismantle the entire GNU GPL open source licensing structure and community.

Finally, even if the Court were persuaded by Hancom's arguments, factual disputes exist that preclude summary judgment. The parties' discovery into Hancom's breach and Artifex's damages has been very limited. For example, Hancom has produced nothing to confirm that it has removed Ghostscript from its software products. At the initial case management conference, Hancom represented to the Court and to Artifex that, in exchange for a stay on the remainder of discovery, Hancom would produce documents supporting its representation that it had discontinued its use of Ghostscript. To date, Hancom has produced no such documents; Hancom has instead treated the Court's contingent partial stay of discovery much like Hancom did the GNU GPL, enjoying the one-sided benefits of an agreement without regard for its promises to the Court or Artifex. Similarly, available evidence, including Hancom's admissions in its discovery responses, present a factual issue regarding when Hancom breached the GNU GPL, whether distribution of each copy of Hancom's software constituted an independent breach, and whether Hancom's separate downloading and use of a later version of Ghostscript constituted a new and independent breach.

For all these reasons, Hancom's motion for partial summary judgment should be denied.

## II. COUNTER STATEMENT OF FACTS

### A. Artifex Offers Ghostscript Only Through Its Dual Licensing Structure

Artifex is a California software company based in Novato, California. Declaration of Miles Jones in Support of Artifex Software, Inc.'s Opposition ("Jones Decl.") ¶ 3. Artifex develops and licenses its software products, including Ghostscript, under a well-publicized dual licensing structure, and Artifex is the exclusive licensing agent for Ghostscript. *Id.* ¶¶ 4, 6, 9. When Hancom first used Ghostscript, prospective licensees of Ghostscript could only license the software one of two ways: (1) under the terms of the royalty-free open source GNU GPL or (2) by entering into a commercial license with Artifex in exchange for a royalty payment. *Id.* ¶¶ 4, 8. On March 10, 2008, when Hancom purports to have first sold software containing Ghostscript, the licensing page of Artifex's website stated:

> If you want to distribute Ghostscript® technology, you've come to the right place: Artifex is the exclusive commercial licensing agent for Ghostscript software. You should know that there is no "public domain" version of Ghostscript. All versions of Ghostscript are provided under one of two licenses described below. If you plan to distribute Ghostscript, you should understand the differences between these licenses. The kind of distribution you plan to make of Ghostscript, as explained below, will determine whether you need a commercial license from Artifex. . . .
>
> 1. Artifex Ghostscript. Artifex Ghostscript is any version of Ghostscript licensed for commercial use and distribution under an Artifex Commercial License. Artifex is the exclusive commercial licensing agent for Ghostscript software.
>
> 2. GPL Ghostscript. GPL Ghostscript can be licensed under the GNU General Public License (the "GNU GPL"). . . .
>
> ***If your application (including its source code) is NOT licensed to the public under the GNU GPL and you intend to distribute Ghostscript to a third party for use with and usable by your application, you MUST first obtain a commercial license from Artifex.***

*Id.* ¶¶ 9-11 & Ex. 1 (emphasis added).

This dual licensing structure allows Artifex to participate in the vibrant and growing community for open source software, as long as users comply with open source licensing requirements. *Id.* ¶ 5. Over the past fifty years, open source software licensing has allowed a collaborative and knowledge-sharing community of software developers to flourish. GitHub, Inc.—the provider of just one of the platforms for hosting and developing open source software—reported that in a single year alone GitHub sees more than 5.8 million active individual users and

more than 331,000 active organizational users contributing to and forking open source projects, and that GitHub hosted more than 19.4 million open source repositories during that same yearlong period. *The State of the Octoverse 2016*, GitHub, https://octoverse.github.com (Sept. 14, 2016). Indeed, one respected technology research firm in 2015 estimated the value of just the open source database market at over $562 million and estimated that by 2018, 70% of new in-house software applications will run on open source databases. Ben Kerschberg, *How Postgres and Open Source Are Disrupting the Market for Database Management Systems*, Forbes, https://www.forbes.com/sites/benkerschberg/2016/03/08/how-postgres-and-open-source-are-disrupting-the-market-for-database-management-systems (Mar. 8, 2016) ("*Kerschberg Forbes Article*").

If a Ghostscript licensee would rather not comply with the disclosure requirements for open source licensing but still wants to commercially use Ghostscript, Artifex requires that it enter into a royalty-based commercial license. Jones Decl. ¶¶ 4, 6, 10. Under this dual licensing structure, Artifex allows the public to learn from, build on, and help improve Ghostscript while also drawing in revenue in instances where a licensee does not want to participate in the knowledge sharing required by the GNU GPL. *Id.* ¶ 5. Artifex still takes a dual licensing approach to its licensing of Ghostscript today but offers open source licensing under the GNU Affero General Public License rather than the GNU GPL. *Id.* ¶¶ 7-8.

### B. Hancom's Breach of the GNU GPL

The timeline of Hancom's use of Ghostscript is not fully known because discovery is still in its earliest stages. Thus far, Artifex's limited understanding of the relevant timeline is based on Hancom's discovery responses, which Artifex has not yet had the opportunity to confirm with documentary evidence or depositions. Hancom represents that it "believes it downloaded Ghostscript Version 8.6 from a website with the address http://www.cs.wisc.edu/~ghost/" and that "[a] portion of Ghostscript Version 8.6 was used in a Hancom software product beginning on or about March 10, 2008." Defendant Hancom, Inc.'s Objections and Responses to Plaintiff Artifex Software, Inc.'s First Set of Interrogatories (Nos. 1-3), Declaration of Darin W. Snyder in Support of Artifex Software, Inc.'s Opposition ("Snyder Decl.") Ex. 3 at 5. Hancom also represents that it

"believes it later downloaded Ghostscript Version 8.71 from a website with the address http://www.cs.wisc.edu/~ghost/" and that "[a] portion of Ghostscript Version 8.71 was used in a Hancom software product beginning on or about April 22, 2011." *Id.*

On March 10, 2008, the website Hancom downloaded Ghostscript version 8.6 from stated:

> Ghostscript is a copyrighted work (Artifex Software, Inc. owns the copyright); it is not shareware or in the public domain.
>
> Versions entitled GPL Ghostscript are distributed with the GNU General Public License, which allows free use, and free copying and redistribution under certain conditions (including, in some cases, commercial distribution). . . . A commercial version is also available from Artifex Software.

*Id.* ¶ 2, Ex. 1. That language linked to the Artifex website, on which Artifex announced and still announces its dual licensing structure. *Id.* Ex. 1; Jones Decl. ¶¶ 9-11.

Hancom did not enter and has never entered into a commercial license with Artifex for Ghostscript. Jones Decl. ¶ 13. Instead, Hancom chose to license Ghostscript under the GNU GPL and represented that licensing decision on its website. *Id.* ¶¶ 14-15 & Ex. 2. Despite its represented compliance with the GNU GPL, Hancom admits that it never distributed or offered to distribute the source code for Hangul or Hancom Office when distributing its software until after Artifex first raised Hancom's breach of the GNU GPL with Hancom. Answer ¶ 25; Declaration of Wangsung Yang ("Yang Decl.") ¶ 5. For purposes of this motion, Hancom admits that its conduct breached the GNU GPL. Mot. at 1 n.1.

Artifex first learned of Hancom's breach of the GNU GPL on May 24, 2016, when a South Korean sales partner raised the possibility of Hancom's unauthorized use of Ghostscript. Jones Decl. ¶ 12. Artifex promptly wrote Hancom regarding this breach of the GNU GPL, seeking to resolve the matter informally. Yang Decl. ¶ 4; Jones Decl. ¶ 17. After Hancom rebuffed Artifex's repeated efforts to resolve the matter informally, Artifex filed suit.

### C. Current State of Discovery

Discovery is in its earliest stages. The parties have only exchanged responses to initial written discovery: no depositions have been taken, no documents have been produced by either party, and no expert reports have been generated or exchanged. Snyder Decl. ¶ 25. Thus, the parties have not completed discovery into the timeline of Hancom's breach. For example, and

most critically, Hancom has not produced documents showing that Ghostscript has been removed from its software—despite Hancom's representations to the Court and to Artifex during the June 16, 2017 case management conference and in contravention of the Court's June 19, 2017 pretrial order. Dkt. No. 41 at 1; Snyder Decl. ¶¶ 20, 23-25, 28. Artifex, accordingly, does not have the benefit of evidence solely in Hancom's control to assess the factual representations regarding use and removal of Ghostscript that Hancom includes in its motion. *See* Yang Decl. ¶¶ 4-5.

Additionally, the parties have not completed discovery into the circumstances of Hancom's use of Artifex's Ghostscript. Snyder Decl. ¶¶ 27-31. To date, Hancom has presented no evidence that it would not have entered into a commercial license for Ghostscript in March 2008 or April 2011, rather than publicly disclose the source code for its products. *See id.* ¶ 25. Nor has Hancom presented any evidence demonstrating that it was unaware of Artifex's dual licensing structure at the time of those decisions. *Id.* Similarly, Hancom has not presented or produced any evidence concerning how many different versions of each of its software products Hancom distributed containing Ghostscript or how many copies it distributed of each of those versions. *Id.* ¶ 27.

## III. LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw "all reasonable inferences [and] resolve all factual conflicts" in the light most favorable to Artifex, the non-moving party. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). A fact is material if it "might affect the outcome of the suit under the governing law," and an issue is genuine if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "This burden is not a light one." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

Although summary judgment as requested by Hancom is inappropriate here as a matter of law, Artifex moves, in the alternative, for denial or deferral of summary judgment as premature under Federal Rule of Civil Procedure 56(d). Rule 56(d) allows the court to deny or continue a motion for summary judgment when the party opposing the motion demonstrates a need for

further discovery to obtain facts essential to its opposition. Fed. R. Civ. P. 56(d); *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). The purpose of this rule is so an opposing party is not railroaded by a premature motion for summary judgment. *Celotex*, 477 U.S. at 326. A party seeking a continuance must "make clear what information is sought and how it would preclude summary judgment." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998).

## IV. ARGUMENT

### A. No Legal Basis Exists for Summary Judgment Precluding Artifex's Recovery of Monetary Damages Measured by a Reasonable Royalty or Disgorgement

Hancom's motion for summary judgment on Artifex's potential recovery for breach of contract in the form of a reasonable royalty or disgorgement of profits is an improper attempt to deny Artifex an opportunity to be made whole from Hancom's breach of the GNU GPL. Artifex seeks these forms of recovery as a ***measure*** of its damages. Hancom avoids this fact, instead directing its motion against straw man arguments Artifex does not make: Artifex is not attempting to write a royalty provision into the GNU GPL, nor has it pled a separate claim for unjust enrichment.

It is undisputed that California law applies to Artifex's breach of contract claim. "It is well-settled that in diversity cases federal courts must apply the choice-of-law rules of the forum state." *Darulis v. Garate*, 401 F.3d 1060, 1062 (9th Cir. 2005). Under California's choice-of-law rule, California law applies unless a party objects. *Hurtado v. Superior Court*, 11 Cal. 3d 574, 581 (1974). Artifex has asserted the applicability of California law because Artifex is incorporated in California, operates from California, and thus enters into contracts, including the GNU GPL, from California. Compl. ¶ 5; Jones Decl. ¶ 3. Despite its reliance on out-of-state cases, Hancom's motion concedes the applicability of California law. Mot. at 6.

Because California law recognizes the availability of a reasonable royalty and disgorgement of profits as potential measures of harm resulting from breach of contract, the Court should deny Hancom's motion as to these forms of recovery.

### 1. A Reasonable Royalty Is an Established and Available Measure of Artifex's Expectation-Based Damages Under California Law

California law recognizes the availability of a reasonable royalty as a measure of damages for a breach of contract claim. *Grail Semiconductor, Inc. v. Mitsubishi Elec. & Elecs. USA, Inc.*, 225 Cal. App. 4th 786, 796 (2014). And here, Artifex's exclusive dual licensing structure means that Hancom should have foreseen that Artifex would seek to calculate the value of its bargain under the GNU GPL as the reasonable royalty Artifex would have received under a commercial license with Hancom. Hancom's request for summary judgment must, accordingly, be denied as to this measure of monetary recovery.

In California, "the measure of damages [for breach of an obligation arising from contract] . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300. "The detriment . . . is that which is foreseeable to the breaching party at the time the contract is entered into." *Wallis v. Farmers Grp., Inc.*, 220 Cal. App. 3d 718, 737 (1990). The goal of these statutes is to "put the plaintiff in as good a position as he or she would have occupied if the defendant had not breached the contract." *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 967 (2004) (internal quotation marks omitted). "In other words, the plaintiff is entitled to damages that are equivalent to the benefit of the plaintiff's contractual bargain." *Id.* at 967-68. So long as harm to the non-breaching party is established, "the *amount* of damages need not be calculated with absolute certainty. The law requires only that some reasonable basis of computation be used, and the result reached can be a reasonable approximation." *Acree v. Gen. Motors Acceptance Corp.*, 92 Cal. App. 4th 385, 398 (2001).

Contrary to Hancom's assertion, Artifex is not seeking to write a royalty provision into the GNU GPL. Artifex is instead pursuing a reasonable royalty as a reasonable ***measure*** of its damages—its foreseeable detriment—resulting from Hancom's breach of the GNU GPL. Artifex does not contend that a royalty provision exists or should exist in the GNU GPL. Indeed, much to the contrary, Artifex licenses Ghostscript under a dual licensing structure specifically because the GNU GPL does not contain a royalty provision: this allows Artifex to forgo a licensing fee in

situations where Artifex can instead benefit (and allow the public to benefit) from a licensee's compliance with the open source requirements of the GNU GPL.

Artifex's dual licensing structure makes the reasonable royalty rate at which Artifex would have licensed Ghostscript to Hancom an appropriate measure and reasonable approximation of Artifex's damages for Hancom's breach of the GNU GPL. Such a damages calculation takes into consideration that the ***only*** way Hancom could have used Ghostscript in the commercial, non-open source manner that it did would have been under a commercial license negotiated with Artifex. Jones Decl. ¶¶ 4, 6. This calculation also reflects what the parties reasonably expected might be the scope of Artifex's detriment and harm resulting from Hancom's failure to comply with the open source requirements of the GPL.

California courts and courts applying California law have consistently acknowledged the availability of a reasonable royalty as a measure of damages for breach of contract. Many of these cases are especially analogous because they involve breaches of non-disclosure agreements ("NDA") that do not contain an express royalty provision. *See, e.g.*, *Grail Semiconductor*, 225 Cal. App. 4th at 795; *Celeritas Technologies, Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1359 (Fed. Cir. 1998). An NDA, like the GNU GPL, is typically a royalty-free license to obtain access to technology or information. Under some NDAs, that access and use is to evaluate whether a commercial license would make sense. *See, e.g.*, *Grail Semiconductor*, 225 Cal. App. 4th at 790-91. Under the GNU GPL, that access and use is often to contribute to the open source community by sharing source code developments, but it can also be to assess whether the software could contribute to a licensee's commercial product and determine whether a commercial license would make sense. *See Jacobsen v. Katzer*, 535 F.3d 1373, 1378-79 (Fed. Cir. 2008). Under both an NDA and the GNU GPL, the licensor grants a licensee the right to use the technology or information for limited purposes with the understanding and expectation that if the licensee wishes to use it in a manner that extends beyond the initial use—generally, a commercial manner—then the licensee will enter into a commercial licensing agreement.

The California Court of Appeal's decision in *Grail Semiconductor* is instructive. There, Grail alleged that Mitsubishi had improperly disclosed and used its trade secrets for commercial

gain in violation of a royalty-free NDA between the parties. *Grail Semiconductor*, 225 Cal. App. 4th at 790-91. For its breach of contract claim, Grail argued that a "royalty Mitsubishi would have paid for use of the technology" was an appropriate measure of its damages, and Grail succeeded on proving damages at trial. *Id.* at 792. The trial court subsequently denied Mitsubishi's motion for judgment notwithstanding the verdict but ordered a new trial on the limited issue of the measure of Grail's damages. *Id.* at 793. The court ordered the new trial because Grail had provided insufficient evidence to support a jury awarding Grail reasonable royalty damages. *Id.* at 794-95. On appeal of the denial of Mitsubishi's JNOV motion, the Court of Appeal clarified that the trial court, in granting the limited new trial, "did not state that the amount the breaching party would have paid to license the technology was an inappropriate measure of Grail's damages; ***on the contrary, it affirmed that measure as a guide to a damages calculation***." *Id.* at 796 (emphasis added). The Court of Appeal explained that the issue was instead whether there was competent evidence for "estimating what Mitsubishi would have paid for a license," not whether a reasonable royalty remedy was available as a matter of law. *Id.*

Similarly, in *Celeritas*—a breach of royalty-free NDA case—the Federal Circuit affirmed the viability of a reasonable royalty theory of contractual damages as an expectation-based measure of Celeritas's damages under California law. 150 F.3d at 1359. The defendant in *Celeritas* argued for a new trial on contract damages after a jury awarded the plaintiff damages in the form of a reasonable royalty. *Id.* The Federal Circuit was unpersuaded by the defendant's assertions that (1) the express availability of injunctive relief under the NDA precluded reasonable royalty damages and (2) a reasonable royalty was not directly related to harm caused by breach of a contract. *Id.* As the Federal Circuit explained, at page 1359:

> [Celeritas] is in the business of licensing its technology. Celeritas entered into the NDA with Rockwell with the reasonable expectation that Rockwell would compensate it for any use made of the disclosed information. This expectation was the motivating factor for Celeritas to share its knowledge with Rockwell. After Celeritas disclosed its proprietary technology to Rockwell, Rockwell was faced with two legitimate choices: it could have used the technology and entered into a licensing agreement with Celeritas or it could have refrained from using the technology. It chose instead to use the technology without compensating Celeritas. To compensate Celeritas for the breach, the jury properly determined the license fee Rockwell would have paid had it not breached the agreement.

The facts and reasoning from *Celeritas* acknowledging the availability of a reasonable royalty as a measure of contract damages apply equally here. Artifex is in the business of licensing its technology using a dual licensing structure: either under the GNU GPL or under a commercial license for a reasonable royalty. Jones Decl. ¶¶ 4, 6, 8; *see Celeritas*, 150 F.3d at 1359. As the exclusive commercial licensing agent for Ghostscript, Artifex forgoes licensing fees every time a licensee licenses Ghostscript under the GNU GPL. Jones Decl. ¶ 6. Under its dual licensing structure, Artifex's reasonable expectation is that any GNU GPL licensee who wishes to use Ghostscript for commercial purposes not in compliance with the GNU GPL will compensate Artifex for such use of Ghostscript by entering into a commercial license. *Id.* ¶¶ 4, 6, 10; *see Celeritas*, 150 F.3d at 1359. Like the defendant in *Celeritas*, Hancom was faced with two legitimate options before it used Ghostscript as it did: comply with the GNU GPL or enter into a commercial license with Artifex. *See* 150 F.3d at 1359. Hancom entirely ignores this fact, instead stating that Hancom was not obligated to discuss a commercial license with Artifex. Yang Decl. ¶ 4. While that may be true had Hancom complied with the GNU GPL, it is not true had Hancom wished to use Ghostscript without abiding by the GNU GPL, as it did here. Hancom's only alternative would have been to license Ghostscript under a commercial license. Jones Decl. ¶¶ 4, 6. Just as in *Celeritas*, a license fee that Hancom would have paid Artifex is an appropriate measure to compensate Artifex for Hancom's breach of the GNU GPL. *See* 150 F.3d at 1359.

That California law recognizes the viability of a reasonable royalty as a reasonable approximation of a non-breaching party's damages is unsurprising. California common law has long recognized a reasonable royalty as a calculation of compensatory damages, especially with regard to the misuse of information or technology that would otherwise have been licensed by the plaintiff. *See Ajaxo Inc. v. E*Trade Fin. Corp.* (*Ajaxo II*), 187 Cal. App. 4th 1295, 1310 (2010) (explaining that the "reasonable royalties" measure of damages codified in California's Uniform Trade Secret Act derived from the availability of that remedy at common law).

Courts elsewhere in the Ninth Circuit agree about the availability of a reasonable royalty measure of contract damages. For example, in *Veritas Operating Corp. v. Microsoft Corp.*, 2008

WL 7404617 (W.D. Wash. Feb. 26, 2008), the district court held that a "reasonable royalty measure of damages is appropriate for breach of contract." *Id.* at *2-3. The *Veritas* court reasoned that Veritas had the "reasonable expectation" that Microsoft would not breach an NDA by using Veritas's confidential information and that a reasonable royalty appropriately compensated it for Microsoft's breach. *Id.* at *4. Federal circuit courts across the country have come to a similar conclusion as to the availability of a reasonable royalty for contract damages. For instance, in *Sikes v. McGraw-Edison Co.*, 665 F.2d 731 (5th Cir. 1982), the court found that an amount approximating a reasonable royalty was an appropriate measure of damages for breach of an NDA. *Id.* at 737. And in *Vitro Corp. of Am. v. Hall Chem. Co.*, 292 F.2d 678 (6th Cir. 1961), the court found that an "established royalty" computation was an appropriate measure of damages for the breach of an NDA. *Id.* at 682-83.

Ignoring controlling cases addressing California law, Hancom relies instead on cases that are inapposite. For instance, in both *Jill Stuart (Asia) LLC v. Sanei Int'l Co.*, 2013 WL 3203893 (S.D.N.Y. June 17, 2013), and *Jim Beam Brands Co. v Tequila Cuervo La Rojeña S.A. de C.V.*, 2011 N.Y. Misc. LEXIS 7257 (N.Y. Sup. Ct. July 12, 2011), the courts expressly based their decisions on the lack of precedent supporting the availability of a reasonable royalty measure of contract damages ***under New York law***. *Jill Stuart*, 2013 WL 3203893, at *5; *Jim Beam Brands*, 2011 N.Y. Misc. LEXIS 7257, at *10-11. Relying on those decisions to prove the lack of precedent ***under New York law*** for a reasonable royalty measure of damages, the court in *Document Sec. Sys. v. Coupons.com*, 55 F. Supp. 3d 485 (W.D.N.Y. 2014), upon which Hancom also relies, concluded that ***New York law*** does not permit the recovery of such damages. *Id.* at 496-97.

Those decisions have no impact on ***California law***, especially given that, as demonstrated above, substantial, long-standing precedent ***does exist*** for such a measure of damages under California law. Moreover, at least one California district court applying New York contract law expressly questioned the legal reasoning behind the *Jill Stuart* line of cases cited by Hancom. *Fox Broad. Co. v. Dish Network LLC*, 160 F. Supp. 3d 1139, 1179-80 (C.D. Cal. 2015). Hancom acknowledges (and attempts to distinguish) this case in its motion, Mot. at 14 n.4, but it fails to

mention that the *Fox* court explicitly rejects the purported logic behind the cases on which Hancom entirely hinges its motion. The *Fox* court explained that "[b]ecause no controlling law holds that reasonable royalties are *not* available as a remedy for a breach-of-contract claim, this Court concludes that reasonable royalties are potentially available under New York law as a remedy." *Fox*, 160 F. Supp. 3d at 1180.

Hancom's reliance on an Illinois district court's decision in *SPSS Inc. v. Nie*, 2009 WL 2579232 (N.D. Ill. Aug. 19, 2009), is similarly irrelevant to this case and the availability of remedies under California law: the court in *SPSS* did not address the availability of a reasonable royalty as a theory of contractual damages. *Id.* at *2. The court found only that the plaintiff could not recover monetary damages in any form for breach of contract because he had not presented a theory as to how he suffered actual damages as a result of the defendant's breach. *Id.* In contrast, Artifex here presents a clear theory and explanation as to how it has been harmed by Hancom's breach, *i.e.*, that as a result of Artifex's dual licensing structure, it would have received a reasonable royalty from Hancom for Hancom's non-open source use of Ghostscript.

Taken together, Hancom's cited cases demonstrate that the availability of a reasonable royalty for breach of contract is, at best, unresolved as a matter of law under New York and Illinois law. But that uncertainty is irrelevant to this motion. Hancom concedes that California law governs this dispute, and controlling California law establishes the availability of a reasonable royalty measure of damages for Hancom's breach of the GNU GPL. Hancom's motion must therefore be denied as to this remedy.

#### 2. Both Disgorgement of Profits and a Reasonable Royalty Are Appropriate Measures of Artifex's Restitution-Based Damages

California law recognizes the availability of restitution-based damages for breach of contract. 1 Witkin, Summary of Cal. Law (10th), Contracts § 1013 ("Restitution may also be awarded in contract actions."). Disgorgement of profits is one measure of restitution, and a reasonable royalty is another. Artifex's dual licensing structure again establishes how to measure these possible forms of restitution by setting the parties' expectation as to the value of the benefit Artifex conferred to Hancom. Hancom's request for summary judgment must, accordingly, be

denied as to these measures of monetary recovery.

Hancom's motion is fatally deficient because it confuses unjust enrichment as a separate equitable ***claim for relief*** with unjust enrichment as a ***measure*** of recovery for a defendant's breach of a contract. Artifex has not brought an independent claim of unjust enrichment. *See generally* Dkt. No. 1. Rather, Artifex seeks recovery for Hancom's breach of contract as measured by Hancom's unjust enrichment. *See* Compl. ¶ 36. Hancom, however, relies on cases that address the viability of unjust enrichment as an independent quasi-contractual claim for relief separate from a breach of contract claim. Mot. at 9. For example, the court in *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087 (9th Cir. 2003), addressed whether an unjust enrichment claim could proceed where no breach of contract claim was alleged. *Id.* at 1090-92; *see also Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009). And in *Spinelli v. NFL*, 96 F. Supp. 3d 81 (S.D.N.Y. 2015), the court addressed the viability of an unjust enrichment claim independent of a breach of contract claim. *Id.* at 135. Because Artifex has not brought a third claim for relief for unjust enrichment, these cases are irrelevant.

The availability of unjust enrichment as a measure of recovery for a breach of contract follows from California statutes and long-standing principles of contract law. California law provides that "[h]e who takes the benefit must bear the burden" and that "[f]or every wrong there is a remedy." Cal. Civ. Code §§ 3521, 3523. One permitted ***measure*** of this benefit taken by a breaching party, and thus the burden that must be borne by that party, is restitution in the form of the breaching party's unjust enrichment. 1 Witkin, Summary of Cal. Law (10th), Contracts § 1013. Specifically, California contract law permits recovery of restitution in the form of disgorgement of the "value" of the "benefit" received under the contract by the breaching party. *See, e.g.*, *Ajaxo Inc. v. E*Trade Grp. Inc.* (*Ajaxo I*), 135 Cal. App. 4th 21, 56-57 (2005). In *Ajaxo I*, the court considered whether restitution would be an appropriate recovery for the defendant's breach of an NDA with the plaintiff and concluded that "restitution requires the return to [plaintiff] of 'value' or 'benefit' that [defendant] received." *Id.* at 56. The court explained that the plaintiff conferred a benefit on the defendant by giving the defendant trade secrets and proprietary information "because, ultimately, [defendant] received technology . . . that helped to

keep it competitive." *Id.* at 56-57. The court held that the jury's award of $1.29 million in disgorgement of the defendant's unjust enrichment was supported by California law. *Id.* at 57.

Here, Artifex seeks restitution—*i.e.*, disgorgement of Hancom's unjust enrichment—in two alternative forms: a reasonable royalty and disgorgement of profits. *See id.* at 56. The benefit conferred here was Hancom's use of Ghostscript, and one measure of the value of that benefit would be the value assigned to such use of Ghostscript. Because Artifex licenses Ghostscript under a dual licensing structure, that value is knowable—it is the reasonable royalty Artifex would have charged Hancom for a commercial license. Jones Decl. ¶¶ 4, 6; *see also Ajaxo I*, 135 Cal. App. 4th at 56-57 (permitting disgorgement of the price defendant would have paid for the technology); Raymond T. Nimmer & Jeff Dodd, *Modern Licensing Law* § 11:52 (2010–11 ed.) (explaining how the statute governing patent infringement damages, "when applied to a license context, suggests a potential overlap with the contract concept that breach of contract entitles the injured party to recovery for the loss of expected benefits from the license").

Courts have approved of a reasonable royalty as a measure of contractual restitution, including in the context of a royalty-free license. For example, in *Agrigenetics, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 2010 WL 4683936 (S.D. Ind. Nov. 10, 2010), the court approved the availability of a reasonable royalty as a measure of contractual restitution for breach of contract. *Id.* at *2. There, the contract at issue was a collaboration agreement to jointly develop particular genetically modified seed corn, and the agreement granted the defendant a right to sell the developed seed corn royalty-free, so long as the defendant complied with certain conditions. *Id.* at *1. In assessing the defendant's breach of that agreement and the plaintiff's possible recovery, the court applied general contract principles, rather than expressly applying Indiana law or the law of any other state, and explained: "expectation damages are not the sole remedy for breach of contract. Occasionally, the aggrieved party's interest is protected by an award of restitution damages." *Id.* at *2. The court went on to conclude that a reasonable royalty was a viable measure of contractual restitution, finding that just because "the reasonable royalty approach is also used in the patent infringement context does not prevent its application in a breach of contract action." *Id.*

Another way to measure Hancom's unjust enrichment from using Ghostscript would be to look at Hancom's profits and calculate the portion attributable to Ghostscript. The court in *Foster Poultry Farms, Inc. v. SunTrust Bank*, 377 F. App'x 665 (9th Cir. 2010), acknowledged the availability of disgorgement of profits as an appropriate breach of contract remedy under California law. *Id.* at 668-69.

The cases on which Hancom relies, on the other hand, are inapposite and do not foreclose the availability of either form of restitution Artifex seeks. In *Move, Inc. v. Beardsley*, 2016 WL 6106729 (C.D. Cal. Mar. 10, 2016), the court rejected plaintiff's claim that it was entitled to disgorgement of defendant's profits because the plaintiff had offered "no evidence that it was damaged" by defendant's breaches, not because disgorgement is unavailable as a matter of law. *Id.* at *3. Because Artifex will be able to establish it has been damaged, this case is irrelevant. And the decision in *Antonick v. Elec. Arts Inc.*, 2014 WL 245018 (N.D. Cal. Jan. 22, 2014), is likewise not important here. The *Antonick* court only held that an award of disgorgement of defendant's profits ***in addition to*** an award of royalties as expectation-based contractual damages would be improper and a windfall. *Id.* at *13. To be clear, Artifex is not seeking to recover an award of restitution that includes both a reasonable royalty and disgorgement of Hancom's profits: Artifex pursues these options as alternate theories for calculating its recovery.

Finally, the available facts demonstrate that Artifex will be able to recover in the form of a reasonable royalty or disgorgement of profits when it establishes Hancom's breach. The law requires "only that some reasonable basis of computation be used" to calculate Artifex's harm; that harm need not be capable of calculation with actual certainty. *Acree*, 92 Cal. App. 4th at 398. Here, Artifex's requested measures of monetary relief are a "reasonable basis" of computation of Artifex's harm: Artifex's dual licensing structure was explained in detail on Artifex's website when Hancom first decided to use a version of Ghostscript. Jones Decl. ¶¶ 9-11 & Ex. 1. And the website from which Hancom downloaded Ghostscript carried similar explanations and even provided a link to Artifex's website. Snyder Decl. Ex. 1. Given Artifex's several notices to the public, Hancom knew, or at a minimum, should have known, its obligations to commercially license Ghostscript. It would thus have been contemplated and foreseeable by the parties that

Artifex's recovery request should Hancom breach the GNU GPL would take the form of a reasonable royalty or disgorgement of profits consistent with such a commercial license.

### B. No Legal Basis Exists for Summary Judgment Limiting the Time Period of Artifex's Monetary Recovery

Hancom's request for summary judgment on termination of the GNU GPL and when Hancom's breach occurred must be denied: California law does not permit Hancom to rewrite the GNU GPL or limit Artifex's recovery to the date of the initial breach, and a myriad of genuine factual disputes exists between the parties as to these issues.

#### 1. Hancom's Obligations Under the GNU GPL Were Not Automatically Terminated, and Each Distribution of Hancom's Software Was a Continuing and Separate Breach

Hancom's motion misstates the effect of the termination clause of the GNU GPL. Section 8 of the GNU GPL states:

> You may not propagate or modify a covered work except as expressly provided under this License. Any attempt otherwise to propagate or modify it is void, and will automatically terminate your rights under this License (including any patent licenses granted under the third paragraph of section 11). . . . Termination of your rights under this section does not terminate the licenses of parties who have received copies or rights from you under this License. If your rights have been terminated and not permanently reinstated, you do not qualify to receive new licenses for the same material under section 10.

Dkt. No. 1-1 at 9-10. According to these terms, upon Hancom's breach of the GNU GPL (*i.e.*, propagation of its software without compliance with the source code disclosure obligations), Hancom's rights to continue propagating or modifying Ghostscript terminated.

That termination of Hancom's rights did not, however, terminate Hancom's and Artifex's other obligations under the GNU GPL. In particular, Hancom's obligations under Section 6 of the GNU GPL to convey accompanying source code or to honor source code offers persisted. *Id.* at 7-8. For instance, under Section 6, a licensee can "offer" rather than immediately provide source code to comply with the GNU GPL. *Id.* at 7. This option "increases the duration of [the licensee's] obligations dramatically. An offer for source must be good for three full years from [the licensee's last binary] distribution." Bradley M. Kuhn et al., *A Practical Guide to GPL Compliance*, Aug. 26, 2008, *available at* https://www.softwarefreedom.org/resources/

2008/compliance-guide.html. Hancom's permission to run an unmodified version of Ghostscript also persisted, pursuant to Section 2. Dkt. No. 1-1 at 5. And both Hancom's and Artifex's obligations with regard to honoring the cure and restatement of rights options set forth in Section 8 persisted. *Id.* at 10. Finally, the contract remained in force pursuant to Section 8 to prevent Hancom from qualifying for new automatic downstream licenses for the same version of Ghostscript. *Id.* at 10.

Hancom's assertion that the termination of Hancom's rights caused the GNU GPL to lack mutuality is thus meritless. The GNU GPL is not the "loose conversation" without clear obligations by both parties that the court found not to be a contract in *Doe v. Culverwell*, 35 Cal. 291 (1868). *Id.* at 295. The GNU GPL is a written contract imposing unambiguous obligations on both parties. And the unpublished superior court decision in *Miottel v. Cohen*, 2005 Cal. App. Unpub. LEXIS 10578 (2005), on which Hancom relies, supports Artifex's interpretation of the GNU GPL, not Hancom's. The *Miottel* court addressed interpretation of the phrase "decide to sell" in a right of first refusal clause in a property lease. *Id.* at *13-14. The court concluded that the only reasonable interpretation would be to interpret "decide to sell" in a way that "harmonized" the language with the other terms of the contract running counter to the plaintiff's interpretation. *Id.* at *15. Here, Artifex's interpretation of Section 8 is in line with both the plain language of that section and is the only way to harmonize that termination language with the reinstatement and cure terms that also appear in Section 8. Artifex's interpretation also recognizes the mutuality of the parties' obligations under the contract: part of the bargain Hancom obtained under the GNU GPL in exchange for its source code disclosure obligations to Aritfex was the right to cure its breach and seek reinstatement of its rights to Ghostscript on both a provisional and permanent basis. Dkt. No. 1-1 at 9-10.

Adopting Hancom's argument that "the GNU GPL must have necessarily terminated as a matter of law" would render nonsensical and meaningless the restatement of rights and cure terms stated in Section 8: if the entire contract terminated upon Hancom's breach of its source code obligations, those portions of Section 8 could never have any effect. This would violate the California law requirement that "[t]he whole of a contract . . . be taken together, so as to give

effect to every part, if reasonably practicable, each clause helping to integrate each other." Cal. Civ. Code § 1641. Under this rule, "[c]ourts must interpret contractual language in a manner [that] gives force and effect to every provision, and not in a way [that] renders some clauses nugatory, inoperative or meaningless." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (1998).

Moreover, California law recognizes a plaintiff's ability to recover for harm occurring as a result of a continuing breach or successive breaches—like Hancom's breach of Section 6—until the plaintiff elects to terminate the contract and communicates that termination to the breaching party. *Gilkyson v. Disney Enters., Inc.*, 244 Cal. App. 4th 1336, 1343 (2016), *review denied* (May 25, 2016); *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 489-90 (1996). The court's decision in *Gilkyson* is instructive. The *Gilkyson* court held that the continuing nature of the defendant's royalty obligations under its contract with the plaintiff rendered each breach of the obligation separately actionable. 244 Cal. App. 4th at 1343. There, the parties' written contract obligated the defendant to pay royalties to the plaintiff every time the defendant sold a copy of plaintiff's song. *Id.* at 1338. The court concluded that such "an obligation . . . was unquestionably a continuing one." *Id.* at 1343.

Here, the same can be said of Hancom's source code distribution obligations. That obligation is tied to each distribution of Hancom's software, not Hancom's general license to use Ghostscript. Per Section 6, only conveying the modified work triggers the source code disclosure obligation, and that obligation is individual to each recipient, not to the public at large. Dkt. No. 1-1 at 7. Thus, Hancom separately breached the GNU GPL each time Hancom distributed a copy of its software containing Ghostscript without an accompanying source code distribution or offer. *Id.*; *Gilkyson*, 244 Cal. App. 4th at 1343.

The California Supreme Court's decision in *Romano* similarly undercuts Hancom's termination argument. In *Romano*, the court addressed whether the plaintiff's ability to recover damages would stop running upon the defendant's initial breach of ongoing contractual obligations. 14 Cal. 4th at 489. The court explained that "[i]n the context of successive breaches of a continuing contractual obligation . . . [the plaintiff] was not bound to treat the contract as

abandoned on the first breach of it, or on any particular breach." *Id*. at 489-90. Instead, the court concluded that the "plaintiff should not be penalized for leaving the defendant an opportunity to retract his wrongful repudiation" of the defendant's contractual obligations and instead "would have the right to elect whether to rely on the contract despite an initial breach" until the time of actual termination by the plaintiff. *Id.*

In this case, Section 8 of the GNU GPL expressly provides for a period when Hancom could retract and remedy its breach by bringing its conduct into compliance with the terms of the GNU GPL. Dkt. No. 1-1 at 9-10. Specifically, Section 8 provides that Hancom could have its rights reinstated under the GNU GPL at any time until Artifex explicitly and finally terminated the license. *Id.* And Hancom notably continued to represent its license to Ghostscript under the GNU GPL on its website after its initial breach. *See* Yang Decl. ¶ 4; Jones Decl. ¶ 15 & Ex. 2. Because Artifex did not finally terminate the license until it wrote Hancom on June 15, 2016, Artifex's ability to recover damages for Hancom's breach did not cease before that date. Yang Decl. ¶ 4; Jones Decl. ¶ 17; *see Romano*, 14 Cal. 4th at 489-90.

The cases cited in Hancom's motion offer no relevant insight here. First, none of the cases addresses a contract containing continuing obligations or successive breaches of those obligations; they are thus factually inapposite to the present situation in which each distribution of Hancom's software constituted a new breach of the GNU GPL. And second, those cases do not stand for the proposition that any breach forever cuts off any recovery, only that a ***plaintiff's election*** to terminate an agreement ***could*** cut off recovery ***if*** that recovery is not foreseeable, *e.g.*, where a notice provision serves as a proxy for what would be a foreseeable period of harm. *See Susteen Inc. v. Sourcenext Corp.*, 266 F. App'x 690, 691 (9th Cir. 2008) (plaintiff unable to collect post-termination payments where plaintiff elected to terminate the agreement); *Postal Instant Press, Inc. v. Sealy*, 43 Cal. App. 4th 1704, 1713 (1996) (same); *Fageol & Tate v. Baird-Bailhache Co.*, 138 Cal. App. 1, 4-5 (1931) ("[A]ppellant's breach did not *ipso facto* terminate the contract. It gave the right to respondents to terminate the contract and it was respondents who elected to bring it to an end."); *Natural Alternatives, LLC v. JM Farms*, 2016 WL 5844475, at *1-2 (E.D. Ky. Sept. 30, 2016) (plaintiff unable to collect post-termination payments where plaintiff

elected to send notice of breach triggering termination following noncompliance after cure period); *CitriLite Co. v. Cott Beverages, Inc.*, 721 F. Supp. 2d 912, 936 (E.D. Cal. 2010) (defendant elected to terminate the agreement without cause pursuant to a 60-day notice provision); *Martin v. UHaul Co. of Fresno*, 204 Cal. App. 3d 396, 410-11 (1988) (damages limited to 30-day notice period where defendant elected to terminate agreement without waiting for notice period to lapse). Here, Artifex first communicated its notice of Hancom's breach and termination of the GNU GPL when it wrote Hancom on June 15, 2016—not on March 10, 2008, when Hancom purports to have first breached the GNU GPL. Yang Decl. ¶ 4; Jones Decl. ¶ 17.

Tellingly, the *Postal Instant Press* decision on which Hancom relies, Mot. at 12, expressly ***rejected*** the broad conclusion Hancom now asks this Court to make as a matter of law. 43 Cal. App. 4th at 1713. The *Postal Instant Press* court explained: "We wish to make it clear we are not holding franchisors can never collect lost future royalties for franchisee's breaches of the franchise agreement. That entitlement depends on the nature of the breach and whether the breach itself prevents the franchisor from earning those royalties." *Id.* There, the plaintiff's ability to recover such royalties was deemed unreasonable because the plaintiff retained the right to immediately replace the defendant-franchisee and begin collecting royalties from the replacement instead. *Id.* at 1715. Here, by contrast, Hancom's breaches directly prevented Artifex from earning the royalties it would have received under a commercial license from Hancom, making Artifex's royalties resulting from those breaches entirely reasonable and foreseeable.

Accordingly, summary judgment should be denied on Hancom's recovery limitation request as a matter of law.

**2. Factual Disputes Preclude Summary Judgment on Hancom's Breach and Termination Arguments**

Genuine, material factual disputes abound with regard to this portion of Hancom's summary judgment motion, such that the Court must necessarily deny summary judgment as to Hancom's proposed March 10, 2008 cutoff date for Hancom's recovery.

Hancom's summary judgment motion on this issue assumes as a factual matter that there is only one breach. While Artifex contests that argument as a matter of law and contract interpretation, Hancom's assertion of a single breach cutting off monetary recovery also requires there to be only one operative breach as a factual matter for the duration of Artifex's recovery period. The few facts already known prove otherwise.

Hancom supports its assertion of a single breach with two representations from the declaration of Mr. Wangsung Yang. Mr. Yang represents that "Hancom first sold software that used Ghostscript on or about March 10, 2008 and continuously sold such software until approximately August 24, 2016, when Ghostscript was permanently removed from Hangul and Hancom Office." Yang Decl. ¶ 4. Next, Mr. Yang represents that "Hancom did not distribute the source code for its Hangul and Hancom Office software during the period from March 10, 2008 until August 25, 2016." *Id.* ¶ 5. From these statements, Hancom concludes that its first and only breach of the GNU GPL occurred on March 10, 2008. Mot. at 11.

The currently available evidence, however, contradicts Hancom's factual conclusion. First, because Hancom's source code disclosure obligations under the GNU GPL are required for each software distribution, Hancom breached the GNU GPL each and every time Hancom distributed software containing Ghostscript. Hancom has not yet produced evidence sufficient to determine how often Hancom distributed software containing Ghostscript. But the facts already show that there has been no single operative breach.

Second, Hancom downloaded and copied at least two different versions of Ghostscript. Hancom admits in its response to Artifex's Interrogatory No. 1 that Hancom downloaded and used at least version 8.6 and version 8.71 of Ghostscript. *Compare* Yang Decl. ¶ 4 *with* Snyder Decl. ¶ 32 & Ex. 3. Hancom therefore entered into the GNU GPL at least twice and breached the GNU GPL at least twice in its use of Ghostscript, once for each version of Ghostscript used.

Because there is ***at a minimum*** evidence of a separate breach of the GNU GPL (1) each time Hancom distributed its software containing Ghostscript to a new user and (2) as to Hancom's distribution of version 8.71 of Ghostscript (rather than the earlier breaches resulting from use of version 8.6 of Ghostscript), there is a genuine factual dispute as to the timing of Hancom's

breaches of the GNU GPL that would govern when Hancom's rights under the GNU GPL terminated—or, as Hancom would (incorrectly) put it, when the GNU GPL terminated in its entirety.

The premature nature of Hancom's motion is especially visible in evaluating this factual issue. By refusing to timely produce information regarding when and whether Hancom removed Ghostscript from its software as well as information regarding the timeline of the versioning of Hancom's products—despite Hancom's representations to the Court at the initial case management conference—Hancom has deprived Artifex of evidence that is solely in Hancom's control. Accordingly, to the extent the Court is not convinced a factual dispute exists based on the evidence already presented by Artifex, Artifex moves in the alternative for denial or deferral of summary judgment as premature under Federal Rule of Civil Procedure 56(d). As detailed in the Declaration of Darin W. Snyder, to fully evaluate and defend against Hancom's motion as to breach or termination cutting off Artifex's monetary recovery, Artifex will need document productions and depositions concerning when Hancom's initial breach occurred and the extent of or when any subsequent breach occurred, *i.e.*, how many copies of Hangul and Hancom Office Hancom distributed and when Hancom downloaded and distributed a later version of Ghostscript. Summary judgment at this stage, if the date of breach in any court order is incorrect, could improperly deny Artifex discovery and recovery for Hancom's breach.

### C. Summary Judgment in Hancom's Favor Would Be Disastrous Public Policy Because It Would Render Meaningless Any Attempt to Enforce Open Source Contracts

Hancom's legally unsupported attacks on the availability of monetary recovery for breach of the GNU GPL would have drastic effects if accepted by the Court given the sheer size of the open source community and the important role that the GNU GPL plays in helping advance software development and knowledge sharing.

The open source software movement has developed over the last half-century into a burgeoning community. One of the many open source developer platforms reports seeing upward of 19.4 million open source repositories and more than 331,000 active organizational and 5.8 million active individual users contributing to and forking open source projects in a single year.

*The State of the Octoverse 2016*, GitHub, https://octoverse.github.com (Sept. 14, 2016). And just a subset of the open source market has been valued at over $562 million by a respected technology research firm that also predicts 70% of new in-house software applications will run on open source databases by 2018. *See Kerschberg Forbes Article*. Dual licensing under the GNU GPL in particular plays a vital role in making important software open source. The dual licensing structure permits companies to make software available to the public while still allowing them to earn revenue when licensees wish to incorporate the GNU GPL-licensed software into larger proprietary programs, like Hancom has done here. The author of the original version of the GNU GPL and progenitor of free software has even recognized this role that dual licensing plays in the open source community. *See* Richard Stallman, *On Selling Exceptions to the GNU GPL*, Free Software Foundation, https://www.fsf.org/blogs/rms/selling-exceptions (Jan. 7, 2010).

Ruling in Hancom's favor would encourage would-be open source licensees to use open source software for commercial gain without complying with open source requirements and without facing any repercussions for their breaches. Put simply, if Hancom's position is accepted, open source licensees like Hancom could commit a single breaching sale of open source software, claim that recovery (which cannot take the form of a reasonable royalty or lost profits) is limited to that single sale and breach (since the GNU GPL will have purportedly terminated and be without any continuing effect), and then reap the commercial benefits of that continuing breach in perpetuity. Should the Court agree with Hancom's logic, it would, in one fell swoop, eviscerate the software sharing community that has been able to thrive under the GNU GPL and similar open source licenses. If there is no monetary penalty for violating the GNU GPL—or even equitable remedy, as Hancom also contends, *see* Dkt. 18 at 7-8—violators like Hancom will simply fail to satisfy the terms of the GNU GPL and just bring their software into compliance should they get caught. And on the flip side, the unavailability of more toothsome enforcement mechanisms could cause widespread demotivation of open source developers, causing them to instead opt for solely commercial licensing (especially in the case of would-be dual licensors) and thereby reducing the benefit the public would gain from the open source work.

Indeed, as this Court previously noted in its order rejecting Hancom's motion to dismiss, the Federal Circuit has condemned an approach to open source licensing that denies a licensor any monetary recovery or rejects the possibility of monetary harm resulting from a licensee's failure to comply with the terms of an open source license. Dkt. No. 32 at 4-5; *see Jacobsen*, 535 F.3d at 1379 ("The lack of money changing hands in open source licensing should not be presumed to mean that there is no economic consideration."). The *Jacobsen* court emphasized that "[t]here are substantial benefits, including economic benefits, to the creation and distribution of copyrighted works under public licenses that range *far beyond traditional license royalties*." *Jacobsen*, 535 F.3d at 1379 (emphasis added). The various economic benefits to a licensor of open source software are derived from a licensee's knowledge-sharing obligations under open source licenses, including, for example, the obligation to distribute source code under the GNU GPL. And the concomitant benefits to the licensor include generating market share for programs by providing certain components for free, developing its reputation in the software community, and taking advantage of rapid and free improvements by licensees. *Id.*

## V. CONCLUSION

Hancom's motion for partial summary judgment should be denied in its entirety. California law supports the availability of reasonable royalty damages and both reasonable royalty and unjust enrichment as measures of restitution-based recovery for Hancom's admitted breach of contract. Additionally, the parties' obligations under the GNU GPL did not terminate as a matter of law on March 10, 2008, and Hancom continued to separately breach the GNU GPL as long as it continued to distribute software containing Ghostscript. Moreover, genuine factual disputes preclude summary judgment as to the date the contract between Hancom and Artifex terminated. And finally, granting Hancom's motion would be terrible public policy.

Accordingly, and for the foregoing reasons, Hancom's motion should be denied.

Dated: July 14, 2017

DARIN W. SNYDER
JESSE J. KOEHLER
ASHISH SUDHAKARAN
O'MELVENY & MYERS LLP

By: */s/ Darin W. Snyder*
Darin W. Snyder

Attorneys for Plaintiff
ARTIFEX SOFTWARE, INC.