UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTIFEX SOFTWARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> HANCOM, INC., <br><br> Defendant. | Case No.16-cv-06982-JSC <br><br> **ORDER RE: DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 44 |

Plaintiff Artifex Software, Inc. brings breach of contract and copyright infringement claims against Defendant Hancom, Inc. arising out of Hancom's alleged breach of an open source software agreement. Hancom's motion for partial summary judgment on Plaintiff's breach of contract claim is now pending before the Court.[1] (Dkt. No. 44.) Having considered the parties' briefs and having had the benefit of oral argument on August 17, 2017, the Court DENIES Defendant's motion. Defendant has not established as a matter of law that it is entitled to judgment in its favor as to the relief available to Plaintiff on the breach of contract claim.

//

//

//

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 11 & 19.)

**BACKGROUND**

**A. Factual Background**

Plaintiff develops and licenses software products that interpret files written in a page description language such as Adobe Systems Incorporated's Portable Document Format ("PDF") files. (Dkt. No. 1 ¶¶ 13-14.) The product at issue in this suit, Ghostscript, interprets files written in PDF for display on a computer screen or for printing. (*Id.* ¶ 15; Dkt. No. 45-1, Jones Decl. at ¶ 4.) Plaintiff is the exclusive licensor of Ghostscript and uses a dual licensing model. (Dkt. No. 45-1 at ¶ 4, 6.) Licensees can enter into a commercial license agreeing to pay Artifex a certain royalty fee, or they can license Ghostscript under a free open source license. (*Id.*) Prior to 2013, Plaintiff's open source license was under the GNU General Public License ("GPL"). (*Id.* at ¶ 8.) Since 2013, Plaintiff has used the GNU Affero General Public License. (*Id.* at ¶ 7.)

Section 9 of the GPL states:

> You are not required to accept this License in order to receive or run a copy of the Program. Ancillary propagation of a covered work occurring solely as a consequence of using peer-to-peer transmission to receive a copy likewise does not require acceptance. However, nothing other than this License grants you permission to propagate or modify any covered work. These actions infringe copyright if you do not accept this License. Therefore, by modifying or propagating a covered work, you indicate your acceptance of this License to do so.

(Complaint ¶ 21; Dkt. No. 1-1 (Ex. 1) at 10.[2]) Section 6 of the GPL requires licensors to distribute or offer to provide copies of source code for all software in the product that is covered by the license. (Dkt. No. 1-1 at 6-7.)

Defendant is a South Korean software company that owns and develops Hangul, a word processing software used primarily in South Korea and the United States as an alternative to Microsoft Word, as well as Hancom Office, a suite of software programs which include Hangul, a spreadsheet software, and a presentation software. (Dkt. No. 44-3, Yang Decl. at ¶¶ 2, 19.) Defendant first sold software using Ghostscript on or about March 20, 2008 and continuously sold

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

such software until approximately August 25, 2016, when Hancom contends Ghostscript was permanently removed from Hangul and Hancom Office. (*Id.* at ¶ 4.) Defendant never discussed or entered into a commercial license with Plaintiff. (*Id.*) Instead, Defendant's website stated that it licensed Ghostscript under the GPL. (Dkt. No. 45-1 at ¶¶ 14-15; Dkt. No. 45-3.[3]) Defendant, however, never distributed or offered to provide the source code for its Hangul or Hancom Office software during the time these software programs used Ghostscript. (Dkt. No. 45-1 at ¶ 5.)

On May 24, 2016, Miles Jones, President of Artifex, received an email from a South Korean sales partner indicating that Hancom's use of Ghostscript in its Hangul and Hancom Office software might not comply with the GPL. (Dkt. No. 45-1 at ¶ 12.) Plaintiff performed its own investigation and determined that Defendant's use of Ghostscript did not comply with the GPL. (*Id.* at ¶ 17.) Plaintiff wrote Defendant on June 15, 2016 to inform it of its breach of the GPL and sought to resolve Hancom's breach informally. (*Id.*) After these discussions failed, Plaintiff filed this lawsuit. (*Id.* at ¶ 18.)

**B.  Procedural Background**

Artifex alleges two claims for relief: (1) breach of contract, and (2) copyright infringement. Artifex seeks permanent injunctive relief enjoining Defendant from further use of any products using Ghostscript, enjoining Defendant from directly or indirectly infringing Artifex's copyright in Ghostscript, and requiring Defendant to distribute to each licensee of Hangul and Hancom Office the complete source code for the products in accordance with the GPL. (Dkt. No. 1 at pp. 11-12.) Plaintiff also seeks compensatory, consequential, statutory, and exemplary damages, as well as attorney's fees and costs.[4] (*Id.*)

---

[3] Exhibit 2 to the Jones Declaration (Dkt. No. 45-3) is a screenshot of Hancom's website from May 25, 2016 which Mr. Jones attests "roughly translates to 'Hancom Office NEO uses ghostscript (http://pages.cs.wisc.edu/~ghost) of Artifex Software and complies with GPL 3.0 (GNU General Public License).'" (Dkt. No. 45-1 at ¶ 15.) Hancom does not dispute the accuracy of this translation.

[4] Specifically, the Complaint seeks "to recover from Hancom the damages Artifex has sustained, including consequential damages, for Artifex's costs in enforcing the GNU GPL. The amounts cannot be determined at this time. Artifex is also entitled to recover as restitution from Hancom any unjust enrichment, including any gains, profits, and advantages that Hancom has obtained as a result of its breach of the GNU GPL. The amount of such unjust enrichment cannot be determined at this time but exceeds $75,000 based on the reasonable royalty rates under which Artifex commercially licenses Ghostscript." (Complaint ¶ 36.)

Defendant responded to the complaint by filing a Rule 12(b)(6) motion to dismiss which the Court denied. (Dkt. No. 32.) At the Initial Case Management Conference, Defendant sought leave to file an early partial motion for summary judgment on the breach of contract claim, which the Court granted. (Dkt. No. 40.) That motion is now under submission. (Dkt. Nos. 44, 45, 49.)

**DISCUSSION**

Defendant's motion for summary judgment is two-fold. First, Defendant insists that the monetary relief Plaintiff seeks for its breach of contract claim is improper because, in essence, Plaintiff cannot recover more for breach of the GPL contract than it would for performance, and since the license was free, there are no damages to be had. Second, Defendant maintains that even if damages are available, they cut off on March 10, 2008, the first day Hancom released its product without complying with the open source requirements.

**A. Whether Monetary Relief is Available for Plaintiff's Breach of Contract Claim**

There are three options for a party seeking to use Ghostscript: (1) obtain a commercial license, (2) use Ghostscript under the GPL without modifying or distributing it, or (3) modify or distribute Ghostscript under the GPL and make the resulting product open source. It is undisputed that Defendant neither obtained a commercial license for its use of Ghostscript nor made its products using Ghostscript open source. Plaintiff seeks damages to make it whole for this alleged breach of the GPL.[5] According to Plaintiff, one way to value this breach is through looking at what it would have recovered if Defendant had instead obtained a commercial license to use Ghostscript. Defendant objects to any such valuation contending that it would impermissibly rewrite the terms of the parties' contract and violate California Civil Code Section 3358's provision that "no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides." Not so.

First, there is a difference between using the alternative commercial license as a way of valuing Defendant's breach of the GPL and imposing the terms of the commercial license on Defendant. Defendant's argument that they are equivocal is unpersuasive. Defendant is correct

---

[5] Defendant concedes that for purposes of this motion that it did in fact breach the GPL.

4

that the Court cannot impose the terms of the commercial license on Hancom, but the jury can use the value of the commercial license as a basis for any damages determination. Defendant's reliance on *Jill Stuart (Asia) LLC v. Sanei Int'l Co.*, No. 12-3699 KBF, 2013 WL 3203893, at *5 (S.D.N.Y. June 17, 2013), is misplaced. In *Jill Stuart*, the court rejected the plaintiff's theory of "contractual copyright infringement" noting that it appeared to be an attempt to make an end-run around the court's prior dismissal of plaintiff's copyright claims. The court noted that under New York law "[u]se of a royalty theory of recovery is generally limited to situations where the parties have had a ... licensing relationship that facilitates computation of the reasonable royalty." *Id*. (internal citation and quotation marks omitted). Because there was no evidence of a similar license upon which damages could have been based, a reasonable royalty was not a proper approximation of damages. *Id*. at *5. The same is not true here. The commercial license is arguably a "similar" license. Further, the *Jill Stuart* decision was based on New York law and at least one California court, applying New York law, has disagreed with its rationale. *See Fox Broad. Co. v. Dish Network LLC*, 160 F. Supp. 3d 1139, 1180 (C.D. Cal. 2015) (noting that *Jill Stuart* is not controlling authority and holding that "[b]ecause no controlling law holds that reasonable royalties are not available as a remedy for a breach-of-contract claim, this Court concludes that reasonable royalties are potentially available under New York law as a remedy for the contract breach claims.").

Under California law, a reasonable royalty may be used to measure damages for breach of contract. *See Grail Semiconductor, Inc. v. Mitsubishi Elec. & Elecs. USA, Inc.*, 225 Cal. App. 4th 786, 795-96 (2014) (concluding that the trial court did not error in finding that the amount the breaching party would have paid to license the technology could be used to measure the damages resulting from breach of a non-disclosure agreement (NDA)). Defendant's insistence that the NDA cases are inapposite is unpersuasive. In *Grail*, the breaching party entered into the NDA to gain access to otherwise confidential information. *See id*. at 790-91. Likewise, here, Defendant obtained access to Ghostscript through entering into the GPL. Under both the NDA and the GPL, the proprietary information or software is provided for free, but limits are placed on the use of this information. *Compare id*. at 790 ("Mitsubishi [is] to keep in strict confidence and trust and not

1 use, disclose or make available to others, including any of its affiliates or third parties any
2 'Proprietary Information' and 'Company Documents and Materials'[] without the prior written
3 consent of [Grail]") *with* Dkt. No. 1-1 at 9 ("You may not propagate or modify a covered work
4 except as expressly provided under this License. Any attempt otherwise to propagate or modify it
5 is void, and will automatically terminate your rights under this License."). In *Grail*, the proper
6 measure of damages for Mitsubishi's breach of the NDA "was the amount Mitsubishi would have
7 paid [] for a lump-sum, fully paid license to use the confidential information." *Grail*, 225 Cal.
8 App. 4th at 795; *see also Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1359 (Fed.
9 Cir. 1998) ("After [plaintiff] disclosed its proprietary technology to [defendant], [defendant] was
10 faced with two legitimate choices: it could have used the technology and entered into a licensing
11 agreement with [plaintiff] or it could have refrained from using the technology. It chose instead to
12 use the technology without compensating [plaintiff]. To compensate [plaintiff] for the breach, the
13 jury properly determined the license fee [defendant] would have paid had it not breached the
14 agreement.").

At oral argument Defendant maintained that the royalties available under the commercial license cannot be used to calculate damages for Hancom's breach, but Defendant could point to no case—other than the non-binding New York law *Jill Stuart* case—which supports this argument. Under these circumstances, Defendant has failed to establish as a matter of law that the value of the commercial license cannot be used as a measure of damages here.

Second, to the extent Plaintiff seeks unjust enrichment or disgorgement as a measure for damages, this too is proper under California law. *See Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014) ("Unjust enrichment is not a cause of action, however, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution.") (internal citation and quotation marks omitted). Defendant's argument to the contrary again misses the mark—conflating the viability of separate claims for restitution and breach of contract with restitution as a way to measure damages. Defendant also errs in arguing that disgorgement is unavailable because Plaintiff was not entitled to anything under the license as it was a free license. The license was not free in the sense that there was no

6

consideration owed under the agreement. As the Federal Circuit has observed:

> The lack of money changing hands in open source licensing should not be presumed to mean that there is no economic consideration, however. There are substantial benefits, including economic benefits, to the creation and distribution of copyrighted works under public licenses that range far beyond traditional license royalties. For example, program creators may generate market share for their programs by providing certain components free of charge. Similarly, a programmer or company may increase its national or international reputation by incubating open source projects. Improvement to a product can come rapidly and free of charge from an expert not even known to the copyright holder.

*Jacobsen v. Katzer*, 535 F.3d 1373, 1379 (Fed. Cir. 2008). Defendant conceded as much at oral argument noting that there may have been a loss of notoriety or leads as a result of Defendant's failure to make its products using Ghostscript open source.

Defendant's reliance on *Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956 (N.D. Cal. 2010), for the proposition that disgorgement is unavailable for breach of a free license under California law is misplaced. In *Oracle*, the court held that the plaintiff could not state a claim for unjust enrichment in the amount of the full replacement value of the property (software) because "plaintiffs retained their right to use, distribute, license, and profit from the software and support materials at issue [and under these circumstances, i]t would not be equitable, logical, or legally permissible to award plaintiffs the full replacement value of property that they never lost or gave away." *Id*. at 970. Here, Plaintiff is not seeking the full replacement value of the software; rather, it seeks to measure restitution or disgorgement by looking to what royalties Defendant would have paid or to Defendant's profits from the use of Ghostscript. Thus, *Oracle* is simply inapposite. In any event, as the *Oracle* court noted: "'Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another[;]' '[a] person is enriched if he receives a benefit at another's expense.'" *Id*. at 969 (quoting *Ghirardo v. Antonioli*, 14 Cal.4th 39, 51 (1996)). Plaintiff gave away its Ghostscript program in consideration for the user making its software open source, which Defendant does not dispute it did not do. The record supports a finding that Defendant received a benefit (the use of Ghostscript) at Plaintiff's expense by depriving Plaintiff of the value of having Defendant's software open source.

Unjust enrichment is available "where [defendant] obtained a benefit they might not have

obtained otherwise" and the plaintiff "not only did [] not get the benefit of the bargain of the confidentiality agreement, but [defendant] misused [plaintiff's] information for its own profit." *Foster Poultry Farms, Inc. v. SunTrust Bank*, 377 F. App'x 665, 669 (9th Cir. 2010). Thus, "under California law, a defendant's unjust enrichment can satisfy the 'damages' element of a breach of contract claim, such that disgorgement is a proper remedy." *Id*. Defendant correctly notes that *Foster* also states that "[u]nder California law, disgorgement of improperly obtained profits can be an appropriate remedy for breach of a contract protecting trade secrets and proprietary confidential information." *Id.* at 668–69 (citing *Ajaxo Inc. v. E*Trade Group, Inc*., 135 Cal.App.4th 21, 37 Cal.Rptr.3d 221, 247–49 (2005)). But this does not foreclose unjust enrichment as a remedy in circumstances such as the one present here where a party obtained a benefit they would not have otherwise obtained and profited from that benefit without providing a corresponding benefit to the other party. Defendant has thus failed to establish as a matter of law that unjust enrichment or disgorgement are not available as a measure of Plaintiff's damages.

In sum, Defendant has not established as a matter of law that Plaintiff is not entitled to the monetary damages it seeks for its breach of contract claim. The motion for summary judgment on this basis is therefore denied.

**B. Termination of Defendant's License**

Defendant's second basis for summary judgment—that its license terminated on March 10, 2008 when it first released a product containing Ghostscript without complying with the open source requirements—is equally problematic. Defendant insists that to the extent that any monetary relief is available on Plaintiff's breach of contract claim, it is circumscribed by language in the GPL which states that a licensee "may not propagate or modify a covered work except as expressly provided under the License" and that any attempt to otherwise do so "will automatically terminate your rights under this Licensee." (Dkt. No. 1-1 at 9.) Plaintiff counters that termination of the licensee's rights through failure to comply with the open source requirements is not the same as termination of the license itself, and instead, only terminates the licensee's rights to continue to propagate or modify Ghostscript.

As an initial matter, the language of the GPL suggests that Defendant's obligations

persisted beyond termination of its rights to propagate software using Ghostscript. Under Section 6, a licensee can either convey the source code with the physical product or convey an offer to provide the source code which will be "valid for at least three years." (Dkt. No. 1-1 at 7.) Further, because the source code or offer of the source code is required each time a "covered work" is conveyed, each time Defendant distributed a product using Ghostscript there was arguably an ensuing obligation to provide or offer to provide the source code.[6] (*Id.*) Finally, Section 8 provides for reinstatement of the license until notice of termination by the copyright holder if certain conditions are met. (*Id.* at 10.) Plaintiff maintains that Defendant's construction—that the GPL terminated as a matter of law the first moment it released the product without the source code—would render these contract provisions meaningless violating the requirement that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641; *see also City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 68 Cal. App. 4th 445, 473 (1998), as modified on denial of reh'g (Jan. 6, 1999) ("[a]ny contract must be construed as a whole, with the various individual provisions interpreted together so as to give effect to all, if reasonably possible or practicable." ). Plaintiff thus reasons that Defendant's breach of the license continued until Plaintiff elected to terminate the license and communicated the termination to Defendant; that is, until June 15, 2016.

Defendant nonetheless insists that the GPL automatically terminated the first time Defendant distributed a product using Ghostscript without making it open source and because it has not since offered the source code, the license was not reinstated. However, Defendant's reliance on *Natural Alternatives, LLC v. JM Farms*, 2016 U.S. Dist. LEXIS 135565 (E.D. Ky. Sept. 30, 2016), and *Susteen, Inc. v. Sourcenext Corp.*, 266 F. App'x 690, 691 (9th Cir. 2008), for the proposition that a contract with an automatic termination provision cuts off recovery for subsequent breaches is misplaced. In *Natural Alternatives*, the parties' agreement included an automatic termination clause if the licensee was notified of a breach and failed to cure the breach

---

[6] A "covered work" means either the unmodified Program or a work based on the Program. (Dkt. No. 101 at 4.)

9

within a three-day notice and cure provision. *See Natural Alternatives*, 2016 U.S. Dist. LEXIS 135565, *3-4. Because the licensor had sent the licensee such a letter and the breach was not corrected, the unambiguous automatic termination provision terminated the licensing agreement. *See id*. at *5-6. Not so here. There is no evidence in the record regarding when Plaintiff notified Defendant that it was terminating the agreement. Although Plaintiff's opposition brief states that it did so on June 15, 2016, the Declaration of Miles Jones, President of Artifex Software, Inc., states that after Artifex first learned of Hancom's breach of the GPL on May 24, 2016, Artifex sent a letter to Hancom "on June 15, 2016, informing Hancom of its breach of the GNU GPL and seeking to resolve Hancom's breach informally." (Dkt. No. 45-1 at ¶¶ 12, 17.) Further, unlike the language of the *Natural Alternative's* agreement which stated that "[t]he term of this Agreement and of the Patent License and the Trademark License . . . shall end [upon certain conditions,]" the agreement here does not end on the licensee's breach; rather the licensee's *rights* automatically terminate. *Compare Natural Alternatives*, 2016 U.S. Dist. LEXIS 135565, at *3 *with* Dkt. No. 1-1 at 9-10.

*Susteen*, which addressed post-termination royalty payments under California law and held that "if a licensor elects to terminate a license agreement upon the licensee's breach, the obligation to pay future royalties ceases as well," is similarly inapposite. *Susteen*, 266 F. App'x at 691.[7] The *Susteen* court noted that the defendant's breach did not render the plaintiff unable to receive the benefits of the bargain and that the plaintiff could have continued to perform under the agreement and received the minimum royalty payments, but instead plaintiff elected to terminate the agreement all together. *Id*. Having done so, plaintiff was not entitled to any post-termination royalty payments. Again, not so here. In addition, there is a dispute regarding when Artifex—the licensor —terminated the agreement.

Even if this were not the case, the undeveloped factual record would foreclose summary

---

[7] The other cases upon which Defendant relies are similarly unpersuasive. *See Schinzing v. Mid-States Stainless, Inc*., 415 F.3d 807, 810 (8th Cir. 2005) (undisputed that licensor terminated the licensing agreement); *In re Arthur Treacher's Franchisee Litig*., 689 F.2d 1137, 1140 (3d Cir. 1982) (undisputed franchisor terminated contract).

10

judgment on this issue. Defendant's discovery responses state that it downloaded and used two different versions of Ghostscript. (Dkt. No. 45-7 at 7.) It used Ghostscript Version 8.6 in a product beginning on or about March 10, 2008 and it used a portion of Ghostscript Version 8.71 in a software product beginning on or about April 22, 2011. (*Id.*) Defendant does not dispute that it downloaded and used a second version of the product three years after it contends Plaintiff's damages are cut-off here. Instead, Defendant maintains that this is irrelevant because under Section 9 of the GNU GPL the licensee is "not required to accept this License in order to receive or run a copy of [Ghostscript]."[8] (Dkt. No. 49 at 16 n.6 (quoting Dkt. No. 1-1 at 10).) It is unclear if Defendant's argument is that it did not modify or change Ghostscript, but merely used it, and as such no source code distributions rights inured. Hancom's Chief Technology Officer, Wangsung Yang's declaration is vague on this point: "Hancom first sold software that used Ghostscript on or about March 10, 2008 and continuously sold such software that used Ghostscript until approximately August 25, 2016." (Dkt. No. 44-3 at ¶ 4.) Plaintiff, for its part, maintains that Hancom's second download of Ghostscript means it again entered into a GPL on April 22, 2011, and at a minimum, that Hancom thereafter breached this license when it distributed software using Ghostscript without the source code or offer of source code. Given the ambiguities in the record on this issue, Defendant has not established as a matter of law that damages, if any, for Plaintiff's breach of contract claim cut off on March 10, 2008.

**CONCLUSION**

For the reasons stated above, Defendant's motion for partial summary judgment is DENIED.

The stay on discovery is lifted.

The parties shall file a joint letter by September 25, 2017 regarding whether they would like a referral to a magistrate judge for a settlement conference, and if so, whether there is a

---

[8] At oral argument, Defendant framed its argument differently, instead maintaining that its download and use of Ghostscript under any subsequent version of the GPL was derivative of its use under the first version and thus no new rights or obligations were created with subsequent downloads. The Court declines to address this new argument improperly raised for the first time at oral argument.

11

particular magistrate judge to whom the parties would like to be referred.

This Order disposes of Docket No. 44.

**IT IS SO ORDERED.**

Dated: September 12, 2017

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge